**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 11, 2003**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v

                             No. 119818

JONATHAN JOE JONES,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

Following a jury trial, defendant was convicted of first-degree murder, MCL 750.316, and conspiracy to commit murder, MCL 750.157a. The Court of Appeals reversed defendant's convictions, holding that defendant was denied a fair trial when the prosecution elicited testimony from its "key witness" that the witness had taken and passed a polygraph test. Although we agree with the Court of Appeals that introduction of this testimony was error, we hold that defendant's convictions should not be reversed because the unpreserved, nonconstitutional error did not affect defendant's substantial

rights.

We reverse the judgment of the Court of Appeals and remand the matter to that Court to address an issue that was raised before that Court, but not decided.

I

On August 11, 1998, at approximately 2:00 to 3:00 a.m., a Saginaw resident named Oliver R. Henderson was kicked and stomped to death[1] by two men. The prosecution alleged the assailants to be Kim G. Martin and the defendant.

The evidence against the defendant included a DNA match of the victim's blood on defendant's trousers,[2] which were seized from defendant's house, inculpatory statements that he made before and after the killing, testimony concerning the defendant's actions two hours after the assault, and testimony of an eyewitness.

Julie Pryor, who has a child fathered by defendant, testified that before the assault defendant had said that he was going to take revenge on the person that had taken his television.

"*A.* [Pryor] said, I'm going to get them, you know. I'm going to hurt them. I'm going to beat them up.

* * *

---

[1] Mr. Henderson died in January 1999, after five months in a coma.

[2] At trial, a scientist from the Michigan State Police DNA lab testified that there were bloodstains matching the victim's blood found on Kim Martin's shoes, as well as on pants belonging to defendant.

2

"*A.* [Pryor] I can't recall exactly, but I know he said, I am going to get that M-F-r.  I'm going to kick his A."

Pryor testified that, after 5:00 a.m. on August 11, defendant had come home, asked her if the police had been by, and changed his clothes.  Pryor also testified that later she asked defendant if he had attacked the victim, "Rodell," and that defendant admitted that he had done it.

"*Q.* Did you have occasion to speak with the defendant, Jonathan Joe Jones, about what had happened to Rodell [the deceased]?

"*A.* Yeah, but it wasn't once or twice maybe.

"*Q.* Where was it that you spoke to him about it?

"*A.* At Mike's house.

"*Q.* What did he say about what had happened to Rodell?

"*A.* I just asked him, you know, why he did it.  And he said he took the TV and told him why.  He wouldn't say nothing else.

"*Q.* Did he seem remorseful?

"*A.* No.

"*Q.* Did he tell you any specific acts that he had done to Rodell?

"*A.* No.

* * *

"*Q.* So you asked him specifically if he had done this to Rodell?

"*A.* Yes.

"*Q.* And he admitted to you that he had?

"*A.* Yeah."

Pryor also testified that on another occasion, while defendant

3

was talking about the victim, she overheard defendant say "he stomped his ass."

On the first day of trial, while cross-examining a police officer, defense counsel sought to demonstrate that Ricky Jones,[3] an eyewitness to the killing, had told multiple stories during the course of the investigation. Counsel asked the officer, "In fact, you gave Mr. Jones a polygraph on two different occasions, is that correct?" The circuit court sustained the assistant prosecutor's immediate objection, and the question was never answered.

At the next recess, the assistant prosecutor moved for a mistrial:

> I'm moving for a mistrial based upon [defense counsel's] referral to the fact that Ricky Jones was given a polygraph test. Clearly if the People brought this out about defendant it would be grounds for a mistrial, and I believe it's just as inappropriate for defense to attack a prosecution witness through the use of inadmissible evidence as it would be for the People to do the same thing.

The court denied the motion:

> Well, I believe it could be handled by a curative instruction. I don't think it manifests necessity and jeopardy has attached. I will deny the motion.

No curative instruction was given, nor was one requested by either party.

The following day, Ricky testified. Ricky stated that

---

[3] Ricky Jones is not a relative of the defendant. To prevent any confusion we will refer to him throughout the opinion as "Ricky."

4

Kim Martin was kicking the victim in the head. After a time, Martin asked defendant, "Did you want a piece of this?" Defendant then joined in. Defendant jumped and landed with both feet on the victim's head four or five times. Ricky acknowledged that he drank three to five forty-ounce beers over a twelve to fourteen hour period on the day of the attack, and had ingested $30 to $40 worth of crack cocaine several hours before witnessing the attack. Near the end of his testimony on direct examination by the assistant prosecutor, the following exchange occurred.

"*Q.* Did you take a polygraph in this case?

"*A.* Yes.

"*Q.* Did you pass that?

"*A.* Yes.

"[*Defense Counsel*]: I'm going to object.

"*The Court*: Sustained.

"[*Assistant Prosecuting Attorney*]: Judge, that was brought up yesterday over my objection.

"*The Court*: Sustained. Sustained. Move on. Move on."

No curative instruction was offered or requested, nor did defendant move to strike the witness's answer.

At the conclusion of the jury trial, defendant was found guilty of first-degree murder and conspiracy to commit murder. He was sentenced to two concurrent terms of life imprisonment.

Defendant appealed to the Court of Appeals, which

reversed defendant's convictions.[4]  The Court of Appeals focused on the assistant prosecutor's question to Ricky about the polygraph examination that he had taken and passed.  The Court of Appeals held that the assistant prosecutor's question violated the bright-line rule that testimony concerning the result of a polygraph examination is not admissible at trial. *People v Barbara*, 400 Mich 352, 377; 255 NW2d 171 (1977).  The Court of Appeals reversed defendant's convictions, holding that the error was prejudicial to defendant and seriously affected the fairness of the judicial proceeding.

We granted the prosecutor's motion for leave to appeal limited to the issue whether defendant's conviction should be reversed because the assistant prosecutor asked a key witness whether he had taken and passed a polygraph examination.

## II

In our grant of leave to appeal, we asked the parties to address the doctrine of invited error.[5]  However, our review of this case has convinced us that invited error is not the

---

[4] Unpublished opinion per curiam, issued July 17, 2001 (Docket No. 221264).

[5] The order stated, in part: "If this was error, what category of error was it, and by what standard should the Court decide whether the error warranted reversal of the defendant's convictions?  The parties are to address specifically whether any error that occurred was 'invited' by the defense.  See *United States v Young,* 470 US 1 (1985); *Vannoy v City of Warren,* 386 Mich 686 (1972); *People v Finley,* 431 Mich 506, 543 n 11 (1988) (Cavanagh, J.).  The parties are to further discuss whether and, if so, how, the 'invited error' doctrine fits into this Court's jurisprudence regarding forfeiture and waiver of error.  See *People v Carines,* 460 Mich 750 (1999); *People v Carter,* 462 Mich 206 (2000)."  465 Mich 974 (2002).

relevant doctrine. Rather, it would be more accurate to characterize the applicable doctrine as "invited response."[6]

The doctrine of invited response is used as an aid in determining whether a prosecutor's improper remarks require the reversal of a defendant's conviction. It is used not to

---

[6] "Invited error" is typically said to occur when a party's own affirmative conduct directly causes the error. For example, in *Vannoy v City of Warren*, 386 Mich 686, 690; 194 NW2d 304 (1972), this Court explained that a party cannot seek appellate review of an instruction that he himself requested, saying, "Assuming error as claimed, that error comes within the purview of what of tradition and common sense is known as 'invited error.'" Appellate review is precluded because when a party invites the error, he waives his right to seek appellate review, and any error is extinguished. *People v Carter,* 462 Mich 206, 214-215; 612 NW2d 144 (2000). To the contrary, in this case the alleged error was not directly attributable to the affirmative conduct of defendant and defendant cannot be said to have waived the alleged error—the prosecutor's overreaching—for appellate review.

A doctrine that is related to the "invited response" doctrine, but not applicable in this case, is the doctrine of "*fair* response." Under the doctrine of fair response, there is no error because a party is entitled to fairly respond to issues raised by the other party. We adopted the doctrine of "fair response" in *People v Fields,* 450 Mich 94; 538 NW2d 356 (1995). Regarding what is fair response, this Court in *Fields* stated, "[t]he nature and type of comment allowed is dictated by the defense asserted, and the defendant's decision regarding whether to testify. When a defense makes an issue legally relevant, the prosecutor is not prohibited from commenting on the improbability of the defendant's theory or evidence." *Id.* at 116. See also *United States v Robinson*, 485 US 25, 31; 108 S Ct 864; 99 L Ed 2d 23 (1988) (holding that when the prosecutor's statement that the defendant could have explained his story to the jury was made in response to the comments made by defense counsel, the prosecutor's statements did not infringe the defendant's Fifth Amendment rights). In contrast, although the prosecutor's conduct in this case was "invited" in the sense that defense counsel "opened the door" to the admission of the polygraph examination evidence, it cannot be characterized as "fair." The response is not "fair" because evidence of a polygraph test is clearly inadmissible, the prosecutor demonstrably knew that the evidence was not admissible, and the prosecutor did not avail himself of the curative instruction offered by the court to remedy defendant's improper questioning, choosing instead to resort to a self-help remedy entailing inadmissible evidence.

excuse improper comments, but to determine their effect on the trial as a whole. *Darden v Wainwright,* 477 US 168, 182; 106 S Ct 2464; 91 L Ed 2d 144 (1986).

The United States Supreme Court has recognized that the doctrine of invited response has an appropriate place in determining whether the prosecutor's closing remarks affected the fairness of a trial. *United States v Young,* 470 US 1, 12-13; 105 S Ct 1038; 84 L Ed 2d 1 (1985). Under the doctrine of invited response, the proportionality of the response, as well as the invitation, must be considered to determine whether the error, which might otherwise require reversal, is shielded from appellate relief. *Young, supra.*

We now apply this doctrine as an aid to determine whether the prosecutor's improper introduction of evidence at trial affected the fairness of the trial. In determining the effect of the prosecutor's improper introduction of the polygraph, we must analyze the circumstances surrounding that error, including the defense counsel's conduct. Whether Ricky had taken a polygraph examination (and, inevitably, whether Ricky had passed the examination) was introduced by defense counsel. By its very nature, especially in the context of the defense's attack on the credibility of Ricky, this question tended strongly to imply that Ricky had "failed" the polygraph examination. Nevertheless, we specifically disapprove of the prosecutor's knowing inappropriate behavior in introducing the evidence of the polygraph examination. The prosecution objected to defense counsel's improper question, and the court

sustained that objection. Further, the court offered to provide a curative instruction, although ultimately one was not requested by either party. It was the assistant prosecutor who then decided on his own to offer the inadmissible evidence in rebuttal to the defense attorney's question about the polygraph. As the Court emphasized in *Young,* the idea of invited response is not to be read as suggesting judicial approval of response-in-kind. *Id.* at 10. In this case, the trial court had offered the remedy of a curative instruction. The prosecution was not entitled to take the matter of balancing the equities into its own hands. A prosecutor has the responsibility of a minister of justice, not simply that of an advocate.

## III

The issue is whether the assistant prosecutor's question to Ricky about the polygraph test is error requiring reversal of defendant's convictions. We review this under the standards for unpreserved, nonconstitutional error. Defense counsel objected to the prosecutor's questions, but only after they had already been answered, and did not request that the answers be stricken. We agree with the rule that to be timely, an objection should be interposed between the question and the answer. See *In re Weiss,* 224 Mich App 37, 39; 568 NW2d 336 (1997). The purpose of requiring objections to be timely, see MRE 103(a)(1), is to give the trial court an

9

opportunity to correct the error. *People v Grant,* 445 Mich 535, 551; 520 NW2d 123 (1994). Accordingly, we review defendant's claim of error under the standard for unpreserved, nonconstitutional error set out in *People v Grant, supra*, and *People v Carines,* 460 Mich 750; 597 NW2d 130 (1999).

To avoid forfeiture of an unpreserved, nonconstitutional plain error, the defendant bears the burden of establishing that: (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights. *Grant, supra* at 548-549, and *Carines, supra* at 763. Once the defendant establishes these three elements, the appellate court must still exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, unpreserved error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence. *Carines, supra* at 763.

We agree with the Court of Appeals that the first two criteria were met. As the parties concede, testimony concerning the result of a polygraph examination is not admissible at trial, *Barbara*, *supra*. The bright-line rule that evidence relating to a polygraph examination is inadmissible is well established. See *Barbara, supra*, and *People v Brocato*, 17 Mich App 277, 290-294; 169 NW2d 483

10

(1969).  Further, the assistant prosecutor had earlier objected to defense counsel's attempt to inject a reference to the polygraph examination.  Thus, there is no question that this was plain error.

The question is whether this plain error affected defendant's substantial rights.  To establish that a plain error affected substantial rights, there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings.  *Grant, supra*.  The defendant bears the burden of persuasion with respect to prejudice.  *Carines, supra*, p 763.  The Court of Appeals held that the error required reversal because Ricky was the prosecution's key witness—the only eye witness to the attack.  We disagree, and hold that defendant has failed to meet his burden of persuasion regarding prejudice.

As we outlined above, there was substantial evidence corroborating Ricky's testimony.  Bloodstains matching the victim's blood were found on Kim Martin's shoes and defendant's pants.  There was testimony that two hours after the attack, the defendant returned home, asked Julie Pryor if the police had been there, and changed his clothes.  Further, Julie Pryor testified that she had heard defendant admit committing the attack on the victim.

We also consider, as a factor in determining whether the error affected defendant's substantial rights, that this was an invited response.  Although the testimony that Ricky had

11

passed the polygraph examination did tend to improperly bolster his credibility, it clearly was in rebuttal to the defense counsel's earlier, inaccurate suggestion that Ricky had failed a polygraph examination. The prosecutor elicited the testimony that the witness had actually passed the polygraph to rebut this false implication. However, there would have been no need to rebut such a false implication if defense counsel had not previously attacked Ricky's credibility with the use of inadmissible evidence. We find that this reduces any potential harm resulting from the improper polygraph evidence introduced by the prosecutor.[7]

Contrary to the dissent's assertion, we do not hold that the invited-response doctrine excuses the prosecutor's "willful and deliberate side-stepping of the trial court's ruling . . . ." *Post* at 3. Rather, as we have explained, n 6, the prosecutor's conduct did *not* constitute a "fair response"; the prosecutor improperly took matters into his own hands by eliciting the inadmissible evidence regarding the polygraph test. Nevertheless, much as the United States Supreme Court did in *Young, supra*, we have examined the

---

[7] We do not "dim[] the brightness" of the rule prohibiting the admission of polygraph-examination evidence, despite the dissent's assertion to the contrary, *post* at 8. The bright-line rule in *People v Barbara, supra,* that testimony concerning the result of a polygraph examination is not admissible at trial remains intact. We reverse the holding of the Court of Appeals that defendant was denied a fair trial because we conclude that this unpreserved, nonconstitutional error did not affect defendant's substantial rights.

12

prosecutor's conduct in context and have determined that although error occurred, reversal under the plain-error doctrine is not warranted.

In *Young*, the defendant was on trial for mail fraud and other crimes arising out of a transaction with Apco Oil Corporation. During summation, defense counsel intimated that the prosecution deliberately withheld exculpatory evidence and attempted to cast a false light on the defendant's activities. Defense counsel pointed at the prosecutor's table and stated: "I submit to you that there's not a person in this courtroom including those sitting at this table who think that [the defendant] intended to defraud Apco." *Young, supra* at 4-5 (citation omitted). The prosecutor did not object to defense counsel's summation, but responded to this statement during rebuttal argument by commenting: "'I think [defense counsel] said that not anyone sitting at this table thinks that Mr. Young intended to defraud Apco. Well, I was sitting there and I think he was. . . . If we are allowed to give our personal impressions *since it was asked of me*.'" *Id.* at 5 (citation omitted). Defense counsel did not object and did not request any curative instructions. On appeal, however, defendant argued that he was unfairly prejudiced by the prosecutor's remarks during rebuttal.

The Court held that the issue was not whether the prosecutor's response was appropriate, but whether it was "plain error" that a reviewing court could act on absent a

timely objection. The Court noted that both defense counsel and the prosecutor played fast and loose with the rules of professional conduct; the Court cautioned that "[t]he kind of advocacy shown by this record has no place in the administration of justice and should neither be permitted nor rewarded; a trial judge should deal promptly with any breach by either counsel." *Id.* at 9. However, the Court held that "the issue is not the prosecutor's license to make otherwise improper arguments, but *whether the prosecutor's 'invited response,' taken in context, unfairly prejudiced the defendant.*" *Id.* Thus, the reviewing court must "not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo." *Id.* at 12 (emphasis supplied.) The Court concluded:

> [T]he prosecutor's statement of his belief that the evidence showed Apco had been defrauded should not have been made; it was an improper expression of personal opinion and was not necessary to answer defense counsel's improper assertion that no one on the prosecution team believed respondent intended to defraud Apco. *Nevertheless, we conclude that any potential harm from this remark was mitigated by the jury's understanding that the prosecutor was countering defense counsel's repeated attacks on the prosecution's integrity and defense counsel's argument that the evidence established no such crime.* [*Id.* at 17-18 (emphasis supplied).]

We find the *Young* Court's plain error analysis to be persuasive. The facts of this case are directly analogous to those present in *Young*: The prosecutor and defendant each played fast and loose with the rules of professional conduct

14

when they, in turn, attempted to place inadmissible polygraph evidence before the jury. However, as in *Young*, any potential prejudice to defendant resulting from the prosecutor's conduct was mitigated by the fact that he was acting in response to defense counsel's own improper attempt to create a false inference that Ricky had failed a polygraph examination. Moreover, in light of the substantial evidence of defendant's guilt, the error cannot be said to have been outcome-determinative.

Given the substantial evidence corroborating Ricky's testimony and establishing defendant's guilt and defense counsel's prior, improper attempt to create a false inference that Ricky had failed a polygraph examination, the additional improper bolstering created by the testimony that Ricky had taken and passed a polygraph test was not outcome-determinative.

Because defendant has not met his burden of establishing that the error complained of affected the outcome of the lower-court proceedings, defendant did not establish the three elements necessary to avoid forfeiture. Accordingly, defendant forfeited the claim of error by not timely objecting to the assistant prosecutor's question to Ricky about the polygraph test.

## Conclusion

For these reasons, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

15

MCR 7.302(F)(1). The Court of Appeals did not address defendant's argument that his convictions should be reversed because the circuit court admitted gruesome photographs. We remand the case to the Court of Appeals to address that issue. We do not retain jurisdiction.

> Elizabeth A. Weaver
> Maura D. Corrigan
> Clifford W. Taylor
> Robert P. Young, Jr.
> Stephen J. Markman

                    S T A T E   O F   M I C H I G A N

                            SUPREME COURT


PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v                                                       No. 119818

JONATHAN JOE JONES,

        Defendant-Appellee.
_____

CAVANAGH, J. (*dissenting*).

        I must respectfully dissent.  I agree with the majority

only to the extent that introduction of the polygraph evidence

constitutes an unpreserved error.  To avoid forfeiture of an

unpreserved    error,    whether    constitutional    or

nonconstitutional, a defendant must prove three things: (1)

the error occurred, (2) the error was plain, and (3) the plain

error affected defendant's substantial rights.[1]  See *People v

Grant*, 445 Mich 535, 548-549; 520 NW2d 123 (1994); *People v

Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

_____

        [1]  Whether    the    error    is    constitutional    or
nonconstitutional has no effect on the test to be employed in
determining whether an unpreserved error ultimately warrants
reversal.   However, I think it is important to note that
improper introduction of polygraph-examination evidence is
arguably a violation of a defendant's constitutional right to
a fair trial, as guaranteed by the Fifth and Fourteenth
Amendments of the United States Constitution. *People v
Barbara,* 400 Mich 352; 255 NW2d 171 (1977).

I agree with the majority that defendant has met the first two prongs. However, I must respectfully dissent from the remainder of the opinion because I disagree with the majority's assertion that defendant has not met his burden of persuasion with respect to the effect the error had on his substantial rights.

An error "affecting substantial rights" is an error that is "prejudicial." In *Grant*, *supra* at 553, this Court held that

> a plain, *unpreserved* error may not be considered by an appellate court for the first time on appeal unless the error could have been decisive of the outcome or unless it falls under the category of cases, yet to be clearly defined, where prejudice is presumed or reversal is automatic. [Emphasis in original.]

While, admittedly, there is other evidence against defendant in this case, bolstering the credibility of the (otherwise incredible) sole eyewitness with the admission of polygraph-examination results is clearly prejudicial.

Polygraph-examination evidence is excluded from trial because it "ha[s] not received the degree of standardization or acceptance among scientists which would warrant admissibility." *People v Barbara*, 400 Mich 352, 364; 255 NW2d 171 (1977). One of the earliest cases in which this Court examined the admissibility of polygraph examinations was *People v Davis*, 343 Mich 348; 72 NW2d 269 (1955). In that

2

case, this Court recognized "[t]he tremendous weight which such tests would necessarily carry in the minds of [jurors]." *Id*. at 372. Although the majority notes the bright-line rule against introducing polygraph-examination evidence, the majority minimizes the effect of that violation on defendant's substantial rights by calling it an "invited response."

The majority's use of the doctrine of "invited response" "as an aid to determine whether the prosecutor's improper introduction of evidence at trial affected the fairness of the trial" *ante* at 8, is flawed in two major respects. First, the "invited response" rule does not allow a party to introduce evidence in response to an improper action. Both cases on which the majority relies, *Darden v Wainwright*, 477 US 168; 106 S Ct 2464; 91 L Ed 2d 144 (1986), and *United States v Young*, 470 US 1; 105 S Ct 1038; 84 L Ed 2d 1 (1985), involved "responses" made in the prosecutor's closing remarks, not "responses" in the form of clearly inadmissible evidence. The prosecutor's willful and deliberate sidestepping of the trial court's ruling on his objection is not the type of "response" contemplated by the "invited response" doctrine. The doctrine of "invited response," as adopted by the United States Supreme Court, does not allow a prosecutor to introduce evidence in derogation of the trial court's ruling that such evidence is improper simply because it is a "response" to defense

counsel's actions.  The majority claims that "[t]he facts of the instant case are directly analogous to those present in *Young*: The prosecutor and defendant each 'played fast and loose with the rules of professional conduct . . . .'" *Ante* at 14.  What the majority fails to recognize in its "analogy" is that the attorneys in *Young* "played fast and loose with the rules of professional conduct" in making their closing remarks (which are not to be considered as evidence by the jury), while the attorneys in this case played fast and loose with introduction of evidence itself.

The second problem with the majority's application of the "invited response" doctrine is the failure to recognize that the doctrine applies where there was no objection to the initial impropriety.[2]  Here, the prosecutor timely objected to the improper question regarding the polygraph examination.  The objection was sustained, and the question remained unanswered.  Yet, apparently because the prosecutor was unsatisfied with the trial judge's refusal to grant a

---

[2]  See *Darden*, *supra* (improper comments by prosecutor were made in closing remarks, in response to comments made by defense in opening summation); *Young*, *supra* at 13 ("the prosecutor at the close of defense summation should have objected to the defense counsel's improper statements with a request that the court give a timely warning and curative instruction to the jury."); *Lawn v United States*, 355 US 339, 359; 78 S Ct 311; 2 L Ed 2d 321 (1958) (defense counsel made improper statements in closing argument, the prosecutor did not object, but rather responded in his summation).

mistrial, he felt compelled to ignore the judge's ruling and elicit information regarding the polygraph examination on cross-examination. The "invited response" doctrine should not be expanded so it can be used as a vehicle for circumventing the rulings of trial judges on the admissibility of evidence, nor should it be applied so as to implicitly condone the conduct of the prosecutor in this case.[3]

The proper procedure when a party attempts to introduce inadmissible evidence is an objection. In this case, a proper objection was made to defense counsel's improper question; the trial judge correctly sustained the objection. Instead of requesting the curative instruction proposed by the judge, the prosecutor chose to ignore the trial court's ruling and attempted to right the wrong on his own.

The majority's expansion of the "invited response" doctrine to allow total disregard for the rulings of the trial judge, as well as the evidentiary rules, could have catastrophic results. Allowing introduction of polygraph-examination evidence through the back door eviscerates the

---

[3] I thank the majority for pointing out that the prosecutor's conduct was improper. *Ante* at 12. While I agree that application of the "invited response" doctrine does not expressly excuse the prosecutor's behavior, it does implicitly condone such behavior. Hopefully, this exchange between the dissent and majority will clarify that the majority opinion should not serve as an invitation to attorneys to defy the rulings of trial judges.

protections guaranteed by the Michigan Rules of Evidence and encourages attorneys to retaliate against the introduction or attempted introduction of improper evidence in any manner they see fit. The prosecutor in this case intentionally ignored the trial court's ruling and declined the proper method of addressing defendant's improper question. It is exactly this type of misconduct that the Michigan Rules of Evidence are intended to protect against.

The "rules are intended to secure fairness in administration . . . to the end that the truth may be ascertained and proceedings justly determined." MRE 102. The rules of evidence are meaningless if evidence that is not admissible under the rules becomes admissible because of egregious behavior on the part of the prosecutor in response to an attempt to introduce improper evidence. This degrades the authority of the trial judge and encourages prosecutorial misconduct.

If one takes away the majority's erroneous application of the "invited response" doctrine, it is clear that defendant's substantial rights were affected by the introduction of the improper polygraph-examination evidence. The evidence was prejudicial to defendant because it could have affected the outcome of the trial.

Once a defendant has shown that an unpreserved error was

a plain error that affected substantial rights, the appellate court may, in its discretion, reverse defendant's conviction. "Reversal is warranted only when the plain, unpreserved error result[s] in the conviction of an actually innocent defendant or when an error seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Ante* at 10, citing *Carines*, *supra* at 783.

The prosecutor's deliberate introduction of polygraph-examination evidence, in derogation of the trial court's ruling, clearly affects the fairness, integrity, and public reputation of judicial proceedings. Polygraph-examination evidence is excluded from trial because it does not meet the standard for admissibility of scientific evidence and because of the potential effect on jurors. See *Barbara*, *supra* at 364; see also *Davis*, *supra* at 372. The prosecutor's flagrant disregard for the trial judge's ruling that the evidence was not admissible clearly affects the integrity and public reputation of judicial proceedings. As the majority correctly notes, "[a] prosecutor has the responsibility of a minister of justice, not simply that of an advocate." *Ante* at 9.

To allow prosecutors (or defense attorneys) to introduce polygraph-examination evidence in response to an improper attempt to reduce or bolster a witness's credibility

undermines the integrity and public reputation of judicial proceedings. In this case, the trial judge sustained the prosecutor's objection when defense counsel questioned a witness about a polygraph examination. The judge also stated that the error could be cured with an instruction. In spite of the judge's ruling, the prosecutor took matters into his own hands and asked the witness about the polygraph examination. This makes a mockery of the longstanding prohibition on introduction of polygraph-examination evidence, the prosecutor's responsibility to act as a minister of justice, and the trial judge's ability to enforce rulings on the admissibility of evidence.

Although the majority does not expressly permit violation of the bright-line rule against introduction of polygraph-examination evidence, the evidence can be admitted through the back door if the prosecutor chooses to disregard the trial court's ruling. In extending the "invited response" doctrine to the admission of polygraph-examination evidence despite a sustained objection, the majority dims the brightness of this rule and opens the door to abuse by both parties.

The introduction of the polygraph-examination evidence constitutes plain error that affected defendant's substantial rights. Because the prosecutorial misconduct also seriously affected the integrity and public reputation of the

8

proceedings, I would affirm the judgment of the Court of Appeals.

                    Michael F. Cavanagh
                    Marilyn Kelly

9