# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SAMUEL JOEL BURCH,

Defendant-Appellant.

UNPUBLISHED
December 26, 2017

No. 333015
Genesee Circuit Court
LC No. 14-036180-FC

Before: MURRAY, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Defendant, Samuel Joel Burch, appeals as of right his jury convictions of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to life in prison for his first-degree murder conviction, and 76 months to 15 years in prison for his felon-in-possession and CCW convictions, to be served concurrently, but consecutive to a two-year term of imprisonment for his felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

Defendant's convictions arise from the shooting death of Zachary Bradburn, which occurred at approximately 2:20 a.m. in the bathroom of the Dawg House Bar in Flint on an evening in July 2014. The victim had a concealed pistol license (CPL), ordinarily carried a handgun, and was carrying one on the night of his death. Defendant's cousin and former codefendant, Reco Burch, was also originally charged with first-degree murder and felony-firearm, but pleaded nolo contendere to reduced charges of manslaughter, MCL 750.321, and accessory after the fact, MCL 750.505, pursuant to a plea agreement by which he agreed to testify against defendant.

Various witnesses provided conflicting testimony about the events surrounding Bradburn's death, and based on such conflicting evidence, the parties offered several conflicting theories. The prosecution's principal theory at trial was that, after Bradburn got into an argument with defendant and Reco, they pushed him into the men's bathroom, where defendant promptly shot him to death as Bradburn pulled out his concealed pistol in a belated attempt to defend himself. The prosecution alternatively argued that even if the jury had a reasonable doubt

about whether defendant was the person who shot Bradburn, it could nevertheless convict him of the charged offenses for aiding or abetting Reco. Contrastingly, defendant's principal theory of the case was that it was Reco who shot Bradburn, and that there was insufficient evidence to prove that defendant aided or abetted Reco. In the alternative, defendant argued that if the jury decided that defendant was the shooter, it should conclude that he acted in self-defense.

## II. STANDARDS OF REVIEW

We review the several unpreserved claims of error defendant now raises on appeal for plain error affecting his substantial rights. *People v Putman*, 309 Mich App 240, 245-246; 870 NW2d 593 (2015); *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012); *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). "To establish plain error requiring reversal, a defendant must demonstrate that 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007) (quotation marks and citation omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted). Further, even if a criminal defendant

> satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Id.* at 763-764 (quotation marks and citation omitted).]

With respect to defendant's arguments that he was denied the effective assistance of counsel at trial, "[w]hether defense counsel performed ineffectively is a mixed question of law and fact; [the Court of Appeals] reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012) (citation omitted). But because defendant's several claims of ineffective assistance of counsel were not raised below[1] and "the trial court did not hold an evidentiary hearing, our review is limited to the facts on the record." *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000) (citation omitted).

## III. ANALYSIS

---

[1] After defendant filed his claim of appeal in this Court, he filed a motion seeking a new trial in the trial court on December 22, 2016, advancing several arguments regarding ineffective assistance of counsel. The trial court did not rule on this motion as it was not filed within the time limits set forth in MCR 7.208(B). Defendant filed two motions seeking remand to the trial court in this Court, alleging, among other things, ineffective assistance of counsel, both of which were denied. *People v Burch*, unpublished order of the Court of Appeals, entered April 20, 2017 (Docket No. 333015); *People v Burch*, unpublished order of the Court of Appeals, entered July 18, 2017 (Docket No. 333015).

## A. CONFRONTATION CLAUSE

Defendant first argues that he was denied his Sixth Amendment right to confront the witnesses against him when the trial court announced a "blanket policy" prohibiting the parties from asking witnesses follow-up questions after the jurors asked questions of those witnesses. Because defendant did not object to the trial court's challenged policy below and did not raise any Confrontation Clause argument, this issue is unpreserved. *People v Payne*, 285 Mich App 181, 199; 774 NW2d 714 (2009). We conclude that defendant has failed to demonstrate plain error.

On the third day of trial, the prosecution called Grel Rousseau to testify as an expert witness. After Rousseau's direct and cross-examinations, the trial court permitted the jurors to ask several questions of him. The prosecution subsequently asked the trial court for leave to ask Rousseau "one question based on" the juror-posed questions, and the trial court responded, "I don't allow questions . . . based upon what the jury asked." Unlike the prosecution, defendant did not request permission to ask such follow-up questions of Rousseau or any other witness.

Defendant is correct that, if believed by the jury, new testimony elicited from eyewitness Victoria Wisenbaugh by a juror-posed question—testimony that defendant and Reco were the aggressors in their confrontation with Bradburn—made it more difficult for defendant to prevail with regard to his self-defense theory. "[A]n aggressor in a chance-medley (an ordinary fist fight, or other nondeadly encounter) who finds that his adversary has suddenly and unexpectedly changed the nature of the contest and is resorting to deadly force . . . must not resort to deadly force if there is any other reasonable method of saving himself." *People v Reese*, 491 Mich 127, 158; 815 NW2d 85 (2012) (quotation marks and citation omitted). See also M Crim JI 7.19 ("A defendant who [assaults someone else with fists or a weapon that is not deadly . . . ] does not lose all right to self-defense. If someone else assaults [him / her] with deadly force, the defendant may act in self-defense, but only if [he / she] retreats if it is safe to do so.").

Nevertheless, defendant has failed to establish any of the essential elements to succeed under plain-error review. Although the trial court refused to allow the prosecution to ask follow-up questions to Rousseau based on the testimony elicited by juror-posed questions, defendant never sought leave to ask follow-up questions of Rousseau, Wisenbaugh, or any other witness. We cannot conclude that the trial court erred—let alone plainly erred—by failing to rule on a matter that never actually arose before it. Indeed, defendant has failed to show that the trial court would not have allowed him to ask follow-up questions had he asked to do so, particularly had he cited his rights under the Confrontation Clause in support. Put another way, defendant cannot transmute his failure to confront witnesses into a ground for reversal. See *People v Jordan*, 275 Mich App 659, 666; 739 NW2d 706 (2007) (recognizing that error requiring reversal cannot stem from error which the complaining party contributed to). "Any other conclusion would be contrary to the rule that defendants cannot harbor error as an appellate parachute." *People v Pipes*, 475 Mich 267, 278 n 39; 715 NW2d 290 (2006) (quotation marks and citation omitted).

Moreover, even accepting defendant's assertion that the trial court plainly erred by failing to sua sponte ask defendant if he wanted to ask follow-up questions of Wisenbaugh, defendant has failed to present any evidence regarding what follow-up questions he might have asked and whether the answers to such questions would have been helpful to the defense. On the contrary,

had defendant questioned Wisenbaugh about why she believed defendant and Reco were the aggressors in their altercation with Bradburn, her answers might very well have been inculpatory, prejudicing him further. Thus, defendant has failed to show that the trial court's purported plain error affected his substantial rights.

## B. EFFECTIVE ASSISTANCE OF COUNSEL

The "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. A defendant must also show that the result that did occur was fundamentally unfair or unreliable. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted).]

The "reviewing court must not evaluate counsel's decisions with the benefit of hindsight[,]" but should "ensure that counsel's actions provided the defendant with the modicum of representation" constitutionally required. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), citing *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008) (citations omitted). Thus, there is a "strong presumption that trial counsel's performance was strategic," and "[w]e will not substitute our judgment for that of counsel on matters of trial strategy[.]" *Id.* at 242-243.

Defendant raises four distinct claims of ineffective assistance on appeal. We analyze each in turn.

## 1. PROPENSITY EVIDENCE

At trial, evidence was adduced of certain prior acts by defendant, and he complains that such evidence improperly suggested to the jury that he had a general propensity to commit criminal acts. In particular, defendant cites the testimony of his former girlfriend, Michelle Davis, that she had seen defendant "with a gun" at some unidentified time, and Reco's testimony that defendant made a living by selling guns and cocaine. Defendant contends that his trial counsel performed ineffectively by failing to request an instruction that the jury could not consider defendant's past criminal conduct (or propensity to engage in criminal conduct) as substantive evidence of guilt in this case. We conclude that defendant has failed to rebut the presumption that his trial counsel's decisions in this regard were both strategic and effective.

Although the parties stipulated that defendant was legally prohibited from possessing a firearm at the time of the shooting incident, there was no evidence of when Davis saw defendant with a gun or whether he was entitled to possess it at that time, and there is nothing inherently criminal about the possession of a firearm. On the contrary, both the Michigan and United States

Constitutions "grant individuals a right to keep and bear arms for self-defense." *People v Yanna*, 297 Mich App 137, 142; 824 NW2d 241 (2012). Therefore, Davis's testimony about defendant possessing a gun at some unspecified time in the past was not evidence that defendant had a general propensity to commit criminal acts.

Further, defendant's trial counsel did not, as defendant tacitly suggests in his brief on appeal, simply neglect to address the propensity issue. On the contrary, defense counsel specifically requested that the trial court not give the pertinent model jury instruction concerning propensity evidence, M Crim JI 4.11, which the trial court had been planning to give. It is strongly presumed that trial counsel did so with some effective trial strategy in mind, and there are valid strategic concerns that support counsel's decision. For example, counsel might have reasonably believed that a propensity instruction would magnify the prejudice of the propensity evidence against his client. See *People v Rodgers*, 248 Mich App 702, 718; 645 NW2d 294 (2001) ("a curative instruction would have likely highlighted the statement, to defendant's detriment"). This is particularly true given the serious impeachment of Reco's credibility (i.e., the evidence of his motive to testify against defendant in exchange for a plea bargain). In other words, counsel might have preferred to attempt to discredit Reco's testimony about defendant's alleged criminal actions rather than potentially reinforcing it by seeking a limiting instruction. After all, M Crim JI 4.11 involves the trial judge suggesting to the jury that the defendant's past conduct constituted "a crime," "crimes," or "improper acts," which certainly carries its own potential for prejudice. On this record, defendant has failed to rebut the strong presumptions that counsel's decision regarding the propensity instruction was both strategic and effective.

## 2. DEFENSE OF OTHERS

Before the jury received its final instructions, defendant's trial counsel informed the trial court that the defense was not requesting an instruction concerning the affirmative defense of defense of others. Defendant contends that counsel's performance in this regard was constitutionally deficient. We conclude that defendant has again failed to rebut the strong presumptions that counsel performed strategically and effectively.

Generally, the decision whether to present alternative defenses—particularly alternative defenses that conflict with the defendant's principal theory of the case—is a matter of trial strategy. See, e.g., *People v Dunigan*, 299 Mich App 579, 583-584; 831 NW2d 243 (2013) (recognizing that trial counsel's decisions regarding what jury instructions to request on the basis of the theory of the defense are strategic). And it is axiomatic, of course, that the ultimate failure of counsel's chosen strategy does not indicate that that strategy was ineffective. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

In the instant case, defense counsel was faced with a strategic conundrum because of the conflicting witness accounts of the events surrounding the shooting incident. Counsel chose to defend principally on the theory that it was Reco—not defendant—who possessed a gun and shot Bradburn, and a claim of defense of others would have been patently inconsistent with that theory because it would have acknowledged that defendant was the shooter. Given (1) Patricia Buchanan's testimony that she overheard the shooting and heard the "shocked" defendant say that Reco shot the victim, with Reco replying, "I know I did," (2) Wisenbaugh's testimony about defendant and Reco being the initial aggressors in their fight with the victim, and (3)

Wisenbaugh's testimony that she immediately ran out of the Dawg House and heard gunshots as she ran (i.e., within a very brief period after defendant and Reco started the fight), it was altogether reasonable for counsel to focus mainly on the theory that Reco was the shooter. Had the jury found the testimony of either Buchanan or Wisenbaugh to be credible, it would have been extremely difficult, if not impossible, for defendant to prevail on a theory of self-defense or defense of others. In contrast, Buchanan's testimony supported the argument that Reco was the shooter and that, even if defendant did help Reco push the victim into the bathroom, defendant did not—as evidenced by his shocked reaction to the shooting—do so with the intent of aiding or abetting Reco in the commission of the murder.

It is true that if the jury believed Reco's testimony and discredited the testimony of both Buchanan and Wisenbaugh, defendant would have had a plausible chance of prevailing on a defense of others theory. Reco testified that he was struggling with Bradburn, who had aimed the gun at defendant, attempted to aim the gun at Reco, and fired shots into the ceiling during the struggle, and that defendant reacted by opening fire and fatally wounding Bradburn. But to support the defense's principal theory of the case, trial counsel chose to attack Reco's credibility, arguing that Reco's testimony was fabricated. Given that Wisenbaugh had no apparent motive to perjure herself in this matter, whereas Reco clearly did, trial counsel's decision to focus on attacking Reco's credibility was reasonable. In addition, defendant has presented no evidence indicating that that decision was unreasonable. Viewed in light of the entire record, with due regard for the difficulty of the case, and without second-guessing counsel with the benefit of hindsight, we cannot conclude that trial counsel performed ineffectively by declining to request a defense of others instruction. Defendant has failed to rebut the strong presumption that counsel's selection of defense theories was both strategic and reasonable.

### 3. POLYGRAPH EVIDENCE

Defendant argues that his trial counsel performed ineffectively by failing to object to the introduction of polygraph evidence through prosecution witness Dominic Manuel, further arguing that no reasonable trial strategy could support trial counsel's failure to do so. Yet again, defendant has failed to rebut the strong presumptions that counsel acted strategically and effectively.

It is true that it is improper to use polygraph evidence to bolster the credibility of a witness. See, e.g., *People v Jones*, 468 Mich 345, 350-351, 355-356; 662 NW2d 376 (2003) (recognizing that the prosecution's questioning of a witness regarding the passage of a lie detector test satisfied the first two requirements of the plain error analysis). "[T]estimony concerning the result of a polygraph examination" is inadmissible at trial. *Id*. at 355. Even so, "[d]eclining to raise objections can often be consistent with sound trial strategy," *Unger*, 278 Mich App at 253, and there are at least two valid reasons why trial counsel might have chosen not to object to the polygraph evidence in this case.

In another factual context, the Michigan Supreme Court has recognized, "there are times when it is better not to object and draw attention to an improper comment." *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995). By objecting to the polygraph evidence, trial counsel might have reasonably feared that he would underscore its importance in the minds of the jurors, thereby further bolstering Manuel's credibility. This is particularly true because, at

the outset of the trial, the trial court instructed the jury as follows: "We don't use polygraphs because, you know what, they're not always reliable. So the lie detector in this trial is going to be you." "Jurors are presumed to follow instructions, and instructions are presumed to cure most errors." *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008) (citation omitted). Counsel reasonably might have thought it better to rely on the trial court's instructions in this regard rather than posing an objection.

Second, trial counsel might have reasonably decided that bolstering Manuel's credibility was beneficial to the defense—or at least more beneficial than prejudicial. Although Manuel testified that defendant told Manuel about the shooting incident, Manuel did not specify whether Reco or defendant was the shooter, and Manuel also suggested that Bradburn was attempting to rob Reco and defendant at the time of the shooting incident. Moreover, Manuel repeatedly testified that he believed it was not defendant but "somebody else," perhaps Reco, who told Manuel about the location of a hidden gun that Manuel believed to be the murder weapon.[2] Consequently, although Manuel's testimony was certainly prejudicial to the defense in some ways, it also tended to support the dual defense theories that there was reasonable doubt whether defendant was the shooter and whether defendant might have acted in self-defense. Because there are at least two valid reasons that trial counsel might have reasonably declined to object to the polygraph evidence, defendant has failed to rebut the presumption that trial counsel's decision in that respect was both strategic and effective.

### 4. USE OF THE PHRASE "THE VICTIM" BY A JUROR

At least once during the trial, a juror-submitted question referred to Bradburn as a "victim." Defendant contends that trial counsel performed ineffectively by failing to object or move for a mistrial, citing the use of the term "victim" as evidence that the jury was biased and had prejudged the case. We disagree.

"Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Given defendant's dual theories of the case (that either Reco was the shooter or defendant acted in self-defense), it was entirely proper to refer to Bradburn as a "victim." "An affirmative defense admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime." *People v Dupree*, 486 Mich 693, 704 n 11; 788 NW2d 399 (2010) (citations omitted). In other words, "the affirmative defense of self-defense justifies otherwise punishable criminal conduct, usually the killing of another person"; it does not eliminate the fundamentally criminal nature of such conduct. *Id*. at 704 n 11, 707. Given that it was undisputed below that Bradburn died as a result of the intentional use of deadly force against him by either defendant or someone else, he was the "victim" of a homicide—even if that homicide was justified. See *People v Laidler*, 491 Mich 339, 347-348; 817 NW2d 517 (2012) (in the context of construing MCL 777.33, "[o]ne representative definition provides that a 'victim' is 'a person who suffers from a destructive or injurious action or agency' "). As a result,

---

[2] Manuel subsequently retrieved that gun and disposed of it, throwing it into a nearby lake.

any objection or motion for a mistrial based on the jury's use of the term "victim" would have been futile.

Further, defendant has failed to show that the result that ultimately occurred in this case was fundamentally unfair or unreliable. "Jurors are presumed to follow instructions, and instructions are presumed to cure most errors." *Petri*, 279 Mich App at 414. At the outset of the trial, the court properly instructed the jury to decide the case based solely on the evidence duly admitted, explaining that such evidence consisted only of sworn witness testimony and admitted exhibits. Given the presumption that the jurors followed the above instructions, defendant has failed to demonstrate that the result that occurred here was fundamentally unfair or unreliable.

## C. LIMITATIONS ON VOIR DIRE

Defendant next argues that he was denied his due process right to a fair trial when the trial court "banned" the parties from mentioning self-defense during voir dire of the prospective jurors. Defendant's trial counsel waived any such claim of error, however, by expressly approving of the trial court's plan to exclude mentions of self-defense from voir dire. See *People v Carter*, 462 Mich 206, 209; 612 NW2d 144 (2000). Waiver extinguishes any error and "precludes defendant from raising the issue on appeal." See *id*. at 209, 216.

## D. JUDICIAL IMPARTIALITY

Finally, defendant argues that the trial court pierced the veil of judicial impartiality, thereby creating presumptions in favor of the prosecution and invading the province of the jury, when the trial court referred to Bradburn as "the victim" on the second day of trial. Because defendant did not object when the trial court used the phrase "the victim" on the ground of judicial bias (or any other ground), this issue is unpreserved. See *Jackson*, 292 Mich App at 597. Defendant's brief on appeal incorrectly treats this issue as if it is preserved, offering no plain-error analysis. Rather, he argues that the purported error is structural in nature and that, as such, he is entitled to automatic reversal. The purported error, however, is structural only if it is preserved. See *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015).

In any event, viewed correctly through the lens of the plain-error standard, defendant's instant claim of error is unavailing. "A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *Jackson*, 292 Mich App at 598 (quotation marks and citation omitted). Under the standard recently set forth by our Supreme Court in *Stevens*, 498 Mich at 164, defendant has failed to demonstrate that the trial court's use of the term "victim"— on one occasion during an eight-day trial while reading a juror-posed question—pierced the veil of judicial impartiality at all, and certainly not to such an extent that it constitutes plain error entitling defendant to reversal. As we have already explained, it was undisputed below that Bradburn was a homicide "victim." The only questions were who killed him and whether their use of deadly force was legally justified. Moreover, although "in some instances judicial conduct may so overstep its bounds that no instruction can erase the appearance of partiality[,]" *Stevens*, 498 Mich at 177-178, "[b]ecause it is well established that jurors are presumed to follow their instructions, a curative instruction will often ensure a fair trial despite minor or brief inappropriate conduct." *Id*. at 177 (quotation marks, citation, and alteration omitted). In this instance, the trial court ordinarily referred to Bradburn by name, and the trial court duly

instructed the jury that judicial comments and conduct were not evidence, repeatedly echoing that the jurors should decide the case exclusively on the evidence admitted at trial, not on any perceived judicial bias. The court's instructions were sufficient to protect defendant's substantial rights.

Affirmed.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood