# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 24, 2020

159427

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v

ZDZISLAW GNAT,
        Defendant-Appellant.

_____/

SC: 159427
COA: 340978
Macomb CC: 2016-003921-FH

Bridget M. McCormack,
*Chief Justice*

David F. Viviano,
*Chief Justice Pro Tem*

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
*Justices*

By order of October 3, 2019, the prosecuting attorney was directed to answer the application for leave to appeal the February 28, 2019 judgment of the Court of Appeals. On order of the Court, the answer having been received, the application for leave to appeal is again considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

CAVANAGH, J. (*dissenting*).

I respectfully dissent from the Court's order denying leave to appeal. Defendant and the trial court have identified serious questions about prosecutorial misconduct in this case and about appellate review of prosecutorial misconduct more generally, and these questions merit this Court's review.

Defendant was convicted of sexually assaulting his daughter, SG. Trial testimony consisted of the complainant and defendant's ex-wife recounting a prolonged history of emotional abuse, and the complainant recounting sexual abuse. Additionally, a jailhouse informant testified that defendant admitted kissing his daughter in a sexual manner. The trial court specifically limited testimony that might merely repeat the complainant's allegations. Defendant did not testify, but defense counsel argued that the allegations were concocted to interfere with his visitation.

The prosecutor made two problematic arguments in closing. First, the prosecutor said of the complainant, "She's told me on a couple of different occasions. She testified in a lower court in front of a different judge . . . . She's been questioned in a lower court by two lawyers, myself and a different lawyer than [defense counsel]." Second, the prosecutor argued:

> I have been a prosecutor for almost 14 years and in the last few years these are the only kinds of cases that I try. . . . And what I found is that in every case, no matter what kind of crime it is, victims lose something, whether it's money, whether it's property, whether it's time healing from wounds or sometimes a loved one, but these cases are different. These cases cause

victims to lose a lot more than those things that I just listed for you. They lose a sense of trust in themselves and in the people that should be taking care of them and making sure that they are safe. They lose a sense of self about them. They question the decisions they make, and no doubt [SG] is no different. Did she make the right decision to not tell her mom the very first time that something happened? Did she make the right decision to appease her father to insure that her mother wasn't harmed in some way? They question everything about what they did from the beginning of the contacts all the way until they disclose. And so that sense of self, that sense of trust in themselves is shaken to the core.

Defense counsel objected that the prosecutor had argued facts not in evidence by stating the complainant had previously been interviewed and testified, that the prosecutor had vouched for the complainant by implying the case had been previously reviewed, and that the prosecutor had vouched for the complainant by invoking the prosecutor's 14 years of experience. The trial court found the objections compelling:

It does appear to me to be a problem in talking about the fact that the case comes to the jury after [SG] has talked to all of these people including me, the Prosecutor, and another judge. It does, does certainly approach the line or go over the line as to trying to persuade the jury that this matter has already been looked at by others, other people have already made the determination that Mr. Gnat is guilty and therefore you should do the logical thing and also find that he is guilty because all of these other people can't be wrong. It's a problem.

The next one is when the prosecutor was saying that I'm an experienced prosecutor and these cases are different. There was no testimony in the record and, indeed the prosecutor could not take the stand and say that I'm a Prosecuting Attorney, I've tried a lot of these cases, these cases are different, the victims of these cases suffer a particular type of harm that is far different than the victims in other cases. . . .

However, the trial court declined to rule on the objections, saying, "We should proceed to the remainder of the arguments, proceed to get a verdict and then if the verdict is not guilty all of these matters are moot. . . . And I'm not deciding that one way or the other right now." The jury convicted defendant, and the trial court revisited the matter at sentencing:

Let's say, I agree with you, as I do, that those were improper comments by the prosecutor. She certainly should not have talked about all of her years of experience as a prosecutor, as soon as that phrase came out, I felt the hair on the back of my neck stand up, as I could not believe I was

hearing that from an experienced, highly ethical, well qualified assistant prosecuting attorney. But she said it and obviously she can't take it back, there's nothing that anybody could do to take it back.

Also then when she talked about, that this victim told the story previously to a judge, . . . it was clear that, as your motion indicates, that she was vouching for the credibility of the victim by putting before the jury matters that were not in evidence. I agree.

The trial court noted that no curative instruction had been requested. Defense counsel stated that he did not think "a curative instruction at that point . . . would've been enough," and the trial court responded, "I . . . tend to agree with you that if the damage is sufficient to be reversible error, that no instruction at that point would've done any good . . . ." The court further opined, "I realize that that kind of curative or cautionary instruction is almost meaningless in terms of what the jury would make of it." The court went on:

. . . I looked at all of the appellate cases, well, obviously I couldn't look at all of them, but page after page on my Westlaw, talked about prosecutorial misconduct, talked about vouching for witnesses, and it's like ninety nine point nine percent of the cases from the Court of Appeals come back affirming the conviction anyway because they regard it as harmless error. . . .

Now, I did make the remark that maybe the reason why assistant prosecutors in prosecutor's offices throughout the State fall into these errors so often is that there's no real sanction for it, because the trial judge feels constrained to deny the motion because the judge doesn't want to put the victim through another trial and also the great weight of the evidence, as it is in this case, appears to me to be in favor of the prosecutor. And, so, the trial judges do not dismiss or grant new trials and the Court of Appeals almost routinely affirms. That does appear to me to be a problem because it means that there never seems to be any sanction to cause prosecutor's offices to take seminars, think about this, sit down, figure out, not to introduce these types of arguments.

Nonetheless, the court concluded, "although these errors are troubling, I do not think that it introduced into the trial such error as to overcome the great weight of the evidence which favored conviction."

Prosecutors have the responsibility of "a minister of justice, not simply that of an advocate." *People v Jones*, 468 Mich 345, 354 (2003). See also MRPC 3.8. This responsibility informs a prosecutor's methods of advocacy. As the United States Supreme Court has stated, "it is as much [a prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring

about a just one." *Berger v United States*, 295 US 78, 88 (1935). Said another way, while a prosecutor "may strike hard blows, he is not at liberty to strike foul ones." *Id*. We have made clear that foul blows include "vouch[ing] for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness," *People v Bahoda*, 448 Mich 261, 276 (1995); arguing facts not in evidence, *People v Lusk*, 225 Mich 642, 644-645 (1923); and asking a jury to sympathize with a complainant, see *People v Reid*, 295 Mich 572, 575 (1940).

Defendant argues that the prosecutor landed all three kinds of these foul blows, and the trial court agreed. The trial court noted that no curative instruction was given and also opined that any curative instruction would have been "essentially meaningless." The trial court observed that in the face of errors like these, convictions are "routinely" affirmed, that trial courts feel "constrained" to deny motions for mistrial for fear of forcing complainants to testify a second time, and that prosecutors face "no real sanction" for this type of conduct. Further, the trial court stated that in the absence of a sanction there was no incentive for "prosecutor's offices to take seminars, think about this, sit down, figure out, not to introduce these types of arguments."

The Court of Appeals affirmed, essentially giving three reasons. First, the Court of Appeals observed that the jury had been given the standard instruction that lawyers' arguments are not evidence. *People v Gnat*, unpublished opinion per curiam of the Court of Appeals, issued February 28, 2019 (Docket No. 340978), p 6. While it is true that jurors were given the standard jury instruction that lawyers' arguments are not evidence, no curative instruction was given. Given the trial court's agreement with defense counsel's statement that a specific curative instruction would not have "been enough," I do not see how the generic instruction could have been. Second, the Court of Appeals reasoned that "SG's testimony was strong, direct evidence of defendant's guilt." *Id*. If the question is whether multiple prosecutorial errors skewed the jury's view of SG's testimony, I cannot see how the observation that SG testified answers the question. Finally, the Court of Appeals said that it "has previously declined to reverse a conviction where isolated, improper remarks did not cause a miscarriage of justice." This is more of a conclusion than an argument, as whether a miscarriage of justice was caused is the question. And none of this addresses the trial court's observations about how claims of prosecutorial conduct are being reviewed, and the possible consequences of that review.

It seems clear to me that this issue "involves a legal principle of major significance to the state's jurisprudence," MCR 7.305(B)(3). I would grant oral argument on the application and invite amicus curiae briefs from interested parties.





I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 24, 2020

Clerk

p0421