*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 28, 2021

Plaintiff-Appellee,

v

No. 350069
Isabella Circuit Court
LC No. 2018-001162-FC

BRANDON RAY-VAUGHN DRENDALL,

Defendant-Appellant.

Before: GADOLA, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Brandon Drendall, was convicted of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b), and accosting a child for immoral purposes, MCL 750.145a. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 142 months to 30 years' imprisonment for CSC-II, concurrent with 8 to 15 years' imprisonment for accosting a child. Because Drendall was denied a fair trial by the admission of highly prejudicial, inadmissible testimony, we reverse his convictions and remand for a new trial.

## I. BASIC FACTS

In June 2017, the complainant, who was seven years old at the time, heard an argument between her mother and Drendall. At the time Drendall was married to the complainant's mother and she called him "dad." The complainant testified that she went to the family's "mudroom" to see what was happening. She believed that both Drendall and her mother were drunk. Eventually, the complainant's mother left the room, crying.

The complainant stayed with Drendall. She recalled sitting on his lap while he identified rocks in a rock collection. She testified that Drendall put his hand up her shirt and then moved it down into her underwear. She stated that Drendall put his finger inside her vagina and moved it in a circular motion. He did not say anything. The complainant made up an excuse to leave the room and went into the kitchen where her teenage sister, her sister's boyfriend, and her mother were located. She then went with her sister to her sister's bedroom and disclosed what had just happened. Later that same night, the complainant told her mother about Drendall touching her. She explained that she told her sister first because she could trust her. Although the complainant

-1-

immediately disclosed the abuse, neither her mother nor her sister contacted the police on her behalf.

Approximately three months later, in September 2017, the complainant's mother left Drendall. In October 2017, she filed for divorce. At issue in the divorce was the custody of the complainant's mother and Drendall's children in common. The complainant's mother testified that she was "somewhat" concerned about whether she would keep custody of the children. And the defense was able to elicit limited testimony regarding the contentious nature of the Drendalls' divorce from the complainant's mother.

The June 2017 sexual abuse was not reported to the police until November 18, 2017. On that night, three teenagers were babysitting the complainant and her half-siblings. Drendall, believing that the teenagers were drinking alcohol and smoking, called the police. The record reflects that, approximately one hour before Drendall called the police, the complainant's maternal grandmother arrived at the house. The grandmother explained that she was scheduled to take over babysitting the children. Five minutes before the police arrived the complainant reported the June 2017 incident to her grandmother. The grandmother testified that within that five minutes she was "able to convince [the complainant, who had sworn her grandmother to secrecy,] that she needed to tell so that someone else couldn't be hurt." After the police arrived, the grandmother promptly told the police about it.

Drendall was charged with first-degree criminal sexual conduct (CSC-I), CSC-II, and accosting a minor for immoral purposes. At trial, the defense theory was that the complainant had made up the allegations at the direction of her mother and grandmother because of the contentious divorce. The jury deliberated for two days and asked the court twice what would happen if they could not reach a unanimous verdict. The jury ultimately acquitted Drendall of CSC-I, but found him guilty of CSC-II and accosting a child for immoral purposes.

## II. ADMISSION OF EVIDENCE

## A. STANDARD OF REVIEW

Drendall first argues that he was denied a fair trial because the prosecutor repeatedly elicited inadmissible, irrelevant, and highly prejudicial evidence that he physically abused the complainant, physically and emotionally abused the complainant's mother, and that he used methamphetamine and got the complainant's mother hooked on methamphetamine. Drendall's lawyer did not object to the evidence of physical abuse, and he did not timely object to the evidence of Drendall's drug abuse. Consequently, this issue is unpreserved. See *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). We review a defendant's unpreserved claims of error for plain error affecting substantial rights. *Id*. To avoid forfeiture, a defendant must show that "(1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Id*. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, unpreserved error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Jones*, 468 Mich at 355.

## B. ANALYSIS

Drendall argues that evidence of his methamphetamine abuse and his alleged physical abuse of the complainant and her mother was inadmissible other-acts evidence and that its admission was plain error affecting his substantial rights.  We agree.

The prosecution elicited detailed testimony from the complainant that Drendall would spank her with his hand, a belt, or "a wooden stick covered in tape."  The complainant explained that he would keep the stick atop a little oven, and, after the complainant's grandmother made him get rid of it, he made a new one.[1]  She stated that he would leave "red marks" on her when he hit her, and during her forensic interview, she disclosed that she had to hide the marks so that relatives would not become upset.  During the medical examination, the complainant added that Drendall "would spank me with a stick of wood with tape wrapped around it because it hurts worse than spanking with a hand."  The complainant agreed with the prosecutor that Drendall had an anger problem, and she stated that she tried to stay away from Drendall because she "knew at some point he would hurt me because he gets really mad . . . and tries to hurt people."

The jury also heard that the complainant reported to the medical doctor that Drendall "does awful things when he's drunk."  The complainant explained that "he says hurtful things like the B word, the F word and the N word," that he would sometimes push her, and that he fought with her mother all the time.  She also told the doctor that Drendall "put hot coffee on my mom, her face was really, really red, he hurt her."  The complainant testified that Drendall treated her mother badly, recounting that Drendall would "hit hurt, hurt her, cuss at her, throw things at her and do not very nice things to her."  She noted that he broke the TV by throwing a remote at her mother.  During her testimony, the complainant's mother corroborated that a TV remote was thrown at her and broke the TV.  The mother also testified that Drendall broke a flat screen TV over her head, resulting in her having to get stitches.  She stated that Drendall threw multiple TVs at her.[2]  The

---

[1] The existence of a taped stick was corroborated by multiple witnesses, and one witness even confirmed that the stick was kept above the stove.  None of the witnesses questioned admitted to seeing Drendall actually beat any of the children with the stick, but multiple witnesses described it as a "scare tactic" to make the children behave, and it was frequently referred to as a "whooping stick."  The grandmother corroborated that she threw the stick away on one occasion; she also testified that the stick had the names of each of the children, including the complainant's, written on it.

[2] On appeal, the prosecution contends that the mother's testimony that multiple TVs were thrown at her was "absurd."  However, the jury also heard that Drendall drank copious quantities of alcohol, had a tape-wrapped stick to threaten and/or beat children, used methamphetamine and introduced others to it, had previously choked the complainant's mother leaving bruises on her neck, had hit the complainant's mother with a flat screen TV making her bleed and requiring stitches, and had thrown hot coffee on her face which left red marks and hurt her.  From the complainant, the jury was informed that Drendall was mean when he was drunk and that he had unchecked anger issues.  In light of all the evidence on the record, an allegation that he also threw a couple of TVs is not so absurd and unbelievable so as to discredit the abundant evidence of physical abuse that was repeatedly presented to the jury.

complainant's grandmother's testimony was supportive in this regard. She testified that she had to take the complainant's mother to the emergency room on one occasion because Drendall "had beat her up." The grandmother also recounted that she had seen "bruises around her neck where [the complainant's mother] suggested that [Drendall] had choked her."

Finally, the prosecutor asked the complainant's mother if Drendall had a problem with drugs or alcohol; the complainant noted that he did, explaining that he would "drink a lot of beer and get drunk." The prosecution asked other witnesses about Drendall's drug use. Of note, the complainant's mother testified that she used methamphetamine because Drendall, who also used methamphetamine, had introduced it to her. The prosecutor also questioned a family witness, who stated that although she was unaware of Drendall's drug use, if he did use methamphetamine it would "[a]bsolutely" affect his parenting because he "would be acting erratic" and would not be "in his right mind." That witness added that she was a licensed nurse practitioner.

MRE 404(b)(1) concerns the admission of other-acts evidence and represents a "deeply rooted and unwavering principle that other-acts evidence is inadmissible for propensity purposes." *People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017). MRE 404(b)(1) operates to prevent a jury from convicting a defendant because of his bad character, rather than because the defendant is guilty of the charged offense. *Id*. Our court rules require the prosecution to provide notice of its intent to introduce other-acts evidence under MRE 404(b). Specifically, MRE 404(b)(2) provides:

> The prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

The purpose of the notice requirement is three-fold: to force the prosecutor to identify and seek admission only of relevant bad acts evidence, to ensure that the defendant has an opportunity to object to, and defend against, the evidence, and to facilitate a thoughtful ruling grounded on an adequate record. *People v Hawkins*, 245 Mich App 439, 454-455; 628 NW2d 105 (2001).

In this case, the prosecution did not provide written notice before trial of its intent to introduce testimony that Drendall physically abused the complainant and her mother. Instead, during his direct examination of the complainant, he brought it up and questioned her at length regarding the nature and extent of the abuse. Other witnesses were also extensively questioned with regard to the abuse. The failure to provide notice under MRE 404(b)(2) is a plain error. Furthermore, it is outcome determinative error as the trial court stated that it would have kept the testimony out had it been presented with a challenge before the jury heard it. The judge stated that the only reason that it permitted the evidence to remain in the record was because there was no objection by the defense lawyer. The judge suggested that it was part of the defense strategy, and, on appeal, the prosecution contends that the defense strategy was to discredit the complainant's and grandmother's testimony by pointing out inconsistencies between the various witnesses

statements regarding the abuse. Yet, the record does not support that this was a strategy the defense was relying on *before* trial. Instead, viewing the record as a whole, it is apparent that, after the jury already heard the unfairly prejudicial testimony, the defense strategy was to minimize it by bringing in testimony contradicting aspects of the complainant's testimony and bringing in witnesses to state that they never saw any physical abuse. Thus, given that there is nothing to suggest that this was part of the pretrial strategy, and in light of the trial court's affirmative statement that it would have excluded the evidence, there is more than a reasonable probability that the evidence would have been excluded at a pretrial hearing if the prosecutor had provided the mandated notice under MRE 404(b)(2).

Additionally, there was no pretrial notice given of the prosecution's intent to introduce evidence that Drendall abused methamphetamine. Rather, the prosecutor questioned the complainant regarding Drendall's use of drugs, eliciting testimony from her that Drendall used both drugs and alcohol. Later, when questioning the complainant's mother, the prosecutor learned that the complainant's mother started using methamphetamine because of Drendall introducing it to her. He then asked a number of follow-up questions to multiple witnesses regarding the drug abuse. On appeal, the prosecutor argues that MRE 404(b)(2)'s notice requirement is not implicated because the mother's answer was nonresponsive to the question asked by the prosecution. However, even if it was nonresponsive, the prosecutor had already asked the complainant about Drendall's drug use. That suggests that the prosecutor was already planning to introduce testimony regarding Drendall's drug use. Moreover, even if the prosecution had no intent to bring evidence before the jury that Drendall used methamphetamine, once the complainant's mother testified to it, the prosecutor should not have made additional inquiries into an irrelevant and unfairly prejudicial subject matter without first asking the court to excuse the lack of pretrial notice for "good cause," as allowed by MRE 404(b)(2). Again, the purpose of notice is to compel the prosecutor to only put relevant other-acts evidence before the jury and to allow the defense an opportunity to object—before the jury hears irrelevant other-acts evidence—to the admission of the testimony. *Hawkins*, 245 Mich App at 454-455. Here, the trial court stated that if there had been a timely objection to the evidence that Drendall used methamphetamine and had introduced the complainant's mother to it, then the court would have sustained the objection. Consequently, not only is the lack of notice under MRE 404(b)(2) plain error, but it is also outcome determinative error as well.

Even if the prosecution had complied with the notice provision in MRE 404(b)(2), admission of the other-acts testimony was nevertheless plain error affecting Drendall's substantial rights. MRE 404(b)(1) provides:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Evidence of other acts is admissible under MRE 404(b)(1) if "(1) the evidence is offered for a proper purpose, i.e., 'something other than a character to conduct theory,' (2) the evidence is relevant under MRE 402, as enforced by [MRE] 104(b), 'to an issue or fact of consequence at trial,' and (3) the probative value of the evidence is not substantially outweighed by its potential for undue or unfair prejudice under MRE 403." *People v Dobek*, 274 Mich App 58, 85; 732 NW2d 546 (2007), quoting *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended on other grounds 445 Mich 1205 (1994).

Drendall argues that the evidence that he physically abused the complainant and the complainant's mother left the jury with the image that Drendall is a mean, violent man who hits women. Drendall contends that it would "not be too big of a leap" for the jury to have concluded that because he was physically abusive he was also sexually abusive. The prosecution bears the burden to demonstrate that the other-acts evidence is relevant to a proper purpose. *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010). The prosecution did not meet that burden in the proceedings before the trial court. The evidence that Drendall used methamphetamine and physically abused the complainant and her mother did not show that Drendall had a motive to sexually abuse the complainant, that he intended to sexually abuse the complainant, that he had a common plan or scheme to do so. It was not needed to identify him as the perpetrator of the abuse. The purpose of the evidence was not to show the absence of a mistake or accident.

The purpose of the evidence was anything but proper. It was used to show that he was a man who had a problem with drugs and alcohol. A man who had unchecked anger problems. A man who used a tape-covered stick with the names of the children living in the house scrawled on it as a "scare tactic" to terrorize the children into behaving. A man of violence who thought nothing wrong with hitting the complainant with that stick, leaving red marks that she had to cover to prevent anyone from getting in trouble. A man who used a tape-covered stick because it *hurt more* than a bare hand. The evidence painted him as a man who introduced his wife to methamphetamine when they were getting along. When they were not getting along, however, he was a man who pushed her and called her names, threw hot coffee in her face, threw TVs and TV remotes at her, hit her over the head with a TV, and choked her. The jury was allowed to consider the above evidence without even a minimal caution that such evidence should not be used as support for an inference that Drendall is a bad man with a propensity to do bad things.

The evidence was irrelevant. It did not have a tendency to make a "fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." See MRE 401. The action to be determined was whether Drendall sexually abused the complainant. His drug use and physical abuse of the complainant and her mother was unrelated to the crime charged. It was also not relevant to impeach the credibility of the complainant. The parts of the physical abuse that she testified to were corroborated by other witnesses, thereby bolstering her credibility while simultaneously painting Drendall as an angry, physically abusive, drug abuser. "Where the only relevance of the proposed evidence is to show the defendant's character or the defendant's propensity to commit the crime, the evidence must be excluded." *People v Knox*, 469 Mich 502, 510; 674 NW2d 366 (2004). In any event, any minimal probative value the evidence may have had to impeach the complainant's mother and grandmother on this unflattering aspect of Drendall's character was substantially outweighed by the danger of unfair prejudice. Thus, even if there was some limited relevance, a proper analysis of the testimony would have resulted in its exclusion under MRE 404(b) and MRE 403.

We note that, when admitting other-acts evidence under MRE 404(b), the trial court should provide a limiting instruction directing the jury on the proper use of the evidence. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). In this case, notwithstanding the other-acts nature of the challenged evidence, no limiting instruction was provided. Instead, when the defense asked for a curative instruction regarding what everyone agreed was improperly admitted evidence of methamphetamine use, the trial court refused to give the instruction, stating instead that "the proofs are in, the proofs are the proofs." Thus, when it went to deliberate, the jury was permitted to consider as substantive evidence—for any purpose it deemed proper—evidence that Drendall was a violent, drug user with an anger problem.[3]

The prosecution argues that even if admission of the evidence was plain error, the error did not affect Drendall's substantial rights, i.e., there is not a reasonable probability that the outcome of the proceedings would have been different without the improper character evidence.

Drendall was charged with sexually molesting a young girl. The complainant was the only witness who testified that she was sexually abused and there was no physical evidence corroborating the abuse.[4] Drendall denied the accusations and introduced evidence that there was an ongoing custody dispute between himself and AR's mother. Although the trial court kept out portions of the testimony concerning the divorce, it is plain that although the abuse allegedly occurred in June 2017, it was not reported until November 2017, after the parties were embroiled in their contentious divorce. The jury in this case was ultimately presented with a credibility contest between Drendall on one side and the complainant on the other side. Weighing heavily against Drendall during that credibility contest was testimony from multiple witnesses that he physically abused the complainant and her mother and that he was a drug-abuser who had gotten his wife hooked on methamphetamine. The other-acts evidence, as explained above, had no probative value. It did have a substantial and unfair prejudicial effect. We conclude that, on this record there is a reasonable probability that, when weighing the testimony of a child against the

---

[3] During closing argument, the prosecutor twice noted that Drendall was not on trial for being a "bad man." Yet, despite that recognition, and ignoring his own role in introducing the inadmissible character evidence, the prosecutor told the jury that the defense had introduced most of the evidence and that, now that it was in, the jury would "have to look at" whether the evidence would go to the credibility of the witnesses. Subsequently, the prosecutor highlighted the more egregious physical abuses Drendall inflicted on his family, thereby leaving the jury with the implication that Drendall's denial of wrongdoing was less worthy of belief because he was a violent man while simultaneously arguing that the complainant's physical-abuse testimony had been corroborated. Thus, not only was the jury not properly instructed, but the way the prosecutor used the inadmissible evidence during his closing argument sowed further confusion as to the use of the evidence and exacerbated the error in admitting it in the first instance, and admitting it without limitation in the second.

[4] The complainant's testimony that she was sexually assaulted did not need to be corroborated. See MCL 750.520h. In any event, we do note that notwithstanding the lack of corroborating evidence regarding the sexual assault, multiple witnesses did corroborate that Drendall physically abused the complainant's mother, had a "whooping stick" covered in tape, and that he spanked the children.

testimony of a man who repeatedly beat her and abused drugs, that the jury's credibility evaluation was tainted such that the outcome of the trial was unfairly affected.

The prosecution argues that the fact that the jury convicted Drendall of only one of the two charged counts of criminal sexual conduct suggests that they were not affected by any prejudice arising from the improper testimony. Yet, given that the jury twice asked what would happen if they could not reach a unanimous verdict, we cannot discount the likelihood that the testimony that Drendall repeatedly subjected the complainant and her mother to physical violence likely influenced the jury to conclude that even if it did not fully believe the complainant's testimony, Drendall was nevertheless a violent man who abused women and children, thereby making him worthy of punishment even if there was reasonable doubt as to the charged crime. "[C]haracter evidence may lead the jury to lower the burden of proof against the defendant, since, even if the guilty verdict is incorrect, no 'innocent' man will be forced to endure punishment." *People v Allen*, 429 Mich 558; 569; 420 NW2d 499 (1988).

Additionally, the danger of the jury using inadmissible evidence to convict Drendall was exacerbated by the trial court's outright refusal to give a curative instruction regarding the improper admission of the drug-abuse evidence. Here, when asked to give a curative instruction, the court declined, stating that there had been no timely objective, so "the proofs are in, the proofs are the proofs." Given that admission of the drug-use testimony was plainly erroneous, we conclude that the trial court abused its discretion by declining to give a curative instruction. See *Brenner v Kolk*, 226 Mich App 149, 164; 573 NW2d 65 (1997). It is impossible to know whether, absent the improper other-acts evidence, the jury would have convicted Drendall or whether it would have acquitted him of all charges, but there is a reasonable probability that they would have acquitted him of both. Finally, given that Drendall's trial was infected with repeated instances of highly prejudicial other-acts evidence, allowing the jury to convict on the basis that he was a bad man, we conclude that the fairness of the judicial proceedings was seriously affected, so reversal is warranted. See *Jones*, 468 Mich at 356.[5]

### III. RIGHT TO PRESENT A DEFENSE

### A. STANDARD OF REVIEW

Drendall next argues that the trial court deprived him of his constitutional right to present a defense when it excluded evidence regarding the custody and divorce proceedings between him and the complainant's mother and evidence that the complainant had made nearly identical allegations of sexual abuse against another man that the complainant's mother was in conflict with at the time the allegations were made. Questions about whether a defendant was deprived of his

---

[5] Drendall also argues that reversal is warranted because his lawyer provided constitutionally ineffective assistance when he failed to object to the inadmissible other-acts evidence and, in some instances, actually elicited testimony that Drendall physically abused the complainant and her mother. Because we conclude that reversal is warranted based upon the plainly erroneous and outcome-determinative admission of the other-acts evidence, we decline to address this alternative basis for reversal.

constitutional right to present a defense are reviewed de novo. *People v Unger*, 278 Mich App 210, 247; 749 NW2d 272 (2008). A defendant has a fundamental right to present evidence in his own defense. *Id.* at 249. However, this right is not absolute and may "bow to accommodate other legitimate interests in the criminal trial process." *Id.* at 250 (quotation marks and citations omitted).

## B. ANALYSIS

### 1. DIVORCE AND CUSTODY

Drendall first argues that the trial court erred by preventing him from presenting evidence that the complainant's allegations were made on the same day that he filed a motion in the divorce case with the complainant's mother. On cross-examination, Drendall's lawyer asked the mother whether Drendall had filed a motion on November 19, 2017, regarding custody, and she did not contest it, stating: "There was lots of motions filed, but I'm sure if that's what you're saying then I'm sure it's true." Drendall's lawyer then attempted to refresh her memory with a document, but the trial court sustained the prosecutor's objection.

The trial court's decision to exclude the evidence was not error because the complainant's mother did not contest that Drendall had filed a motion regarding custody on November 19, 2017. As a result, there was no need to refresh her memory. Further, evidence that a custody motion was filed on November 19, 2017, was not relevant to the determination of this case. Officers arrived at the home at 11:37 p.m. on the night of November 18, 2017, and Drendall did not file the motion until the next day. Therefore, the motion could not be used as evidence that the complainant's grandmother reported allegations to get back at Drendall for filing the motion.

### 2. MOTHER'S DRUG USE

Drendall next argues that he was prevented from presenting a defense because the trial court erroneously excluded evidence that the complainant's mother had a positive drug screen around the time that AR's allegations were reported to the officers. Drendall's lawyer tried to introduce the evidence to impeach the complainant. However, the complainant had already testified at that point and the evidence was not relevant to her testimony. Furthermore, the jury heard from the complainant's mother that she was a "hot mess" who abused methamphetamine. Drendall was not denied a defense on this basis.

### 3. PRIOR SEXUAL ASSAULT ALLEGATIONS

Finally, Drendall argues that he was denied the opportunity to present a defense because the trial court erroneously prevented him from introducing evidence that the complainant had made nearly identical allegations of assault against another man. Drendall tried to admit evidence showing that the complainant had previously disclosed that, in July 2014, her maternal grandmother's boyfriend put his finger in her vagina.[6] Drendall's lawyer stated that he intended to call the grandmother's now ex-boyfriend, who would testify that he believed the complainant's

---

[6] At the time, the complainant would have been approximately four years old.

mother was behind the allegations because she did not like him.  The prosecution noted that the complainant was four years old at the time of her forensic interview, and there had not been sufficient evidence to criminally charge the grandmother's boyfriend.  The trial court refused to admit the evidence.

Drendall argues that the evidence was admissible pursuant to MRE 404(b) as evidence of a common scheme or plan by the complainant's mother to put the complainant up to making false allegations of sexual abuse against men that she was in conflict with.  Such evidence is not subject to the rape-shield statute.  *People v Rogers*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 336000); slip op at 14; see also *People v Jackson*, 477 Mich 1019, 1019 (2007) (stating that testimony that "the complainant has previously been induced by his father to make false allegations of sexual abuse against other persons disliked by the father" was admissible under MRE 404(b) and that such evidence did not implicate the rape-shield statute, MCL 750.520j).  Indeed, it has long been recognized by Michigan courts that, in defense against a charge of sexual assault, "the defendant should be permitted to show that the complainant has made false accusations of rape in the past."  *People v Hackett*, 421 Mich 338, 348; 365 NW2d 120 (1984).  Yet, before such evidence may be admitted, the defendant must first make an offer of proof demonstrating the evidence's relevance to a proper purpose.  *People v Williams*, 191 Mich App 269, 272-273; 477 NW2d 877 (1991).  And, if necessary, the trial court should conduct an evidentiary hearing to determine whether the evidence is admissible and to ensure that the scope of the cross-examination is limited "to prevent questions that would harass, annoy, or humiliate the victim and to guard against fishing expeditions."  *Id*. at 273.

Here, the defense lawyer made an offer of proof as to what the grandmother's ex-boyfriend would have offered during his testimony.  Specifically, the defense identified that the allegations were nearly identical, with both ex-boyfriend and Drendall accused of inserting a finger into the complainant's vagina.  In the present matter, there was testimony that the complainant's mother was going through a contentious divorce with Drendall and she was somewhat concerned about custody.  In the prior matter, the offer of proof showed that the alleged abuser was in conflict with the complainant's mother who did not like that he had told the complainant's grandmother to stop enabling the complainant's mother.  No charges were brought in the prior case.  Instead, a forensic examination occurred and, apparently, there was not enough evidence to proceed to trial.  The trial court denied admission of the evidence, focusing solely on whether the proffered testimony was hearsay or was speculation on the part of the proposed witness.  The court did not, however, properly evaluate whether the evidence would be admissible under MRE 404(b) as evidence of a common plan or scheme on the part of the complainant's mother to induce the complainant to initiate sexual-abuse allegations against men that she wanted out of her life.

Because remand for a new trial is necessary based upon the admission of unfairly prejudicial character evidence, we direct that, on remand, if brought in a proper motion, the trial court shall again consider the admissibility of the evidence of a prior accusation of sexual abuse.  Specifically, the trial court shall consider whether the evidence is admissible under MRE 404(b).

Reversed and remanded for a new trial.  We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Michael J. Kelly