*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 16, 2023

Plaintiff-Appellee,

v

No. 358337
Isabella Circuit Court
LC No. 2020-000195-FH

RODERICK DEMOND GILL,

Defendant-Appellant.

Before: GLEICHER, C.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of (a) two counts of conspiracy to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*); MCL 750.157a; (b) one count of operating a motor vehicle while license suspended, revoked, or denied, MCL 257.904(3)(a); (c) two counts of delivery of less than 50 grams of cocaine, second offense, MCL 333.7401(2)(a)(*iv*); MCL 333.7413(1); (d) one count of possession with intent to deliver less than 50 grams of heroin, second offense, MCL 333.7401(2)(a)(*iv*); MCL 333.7413(1); (e) one count of possession with intent to deliver less than 50 grams of cocaine, second offense, MCL 333.7401(2)(a)(*iv*); MCL 333.7413(1); (f) two counts of maintaining a drug vehicle, MCL 333.7405(1)(d); MCL 333.7406; and (g) one count of bringing a controlled substance into a jail facility, MCL 801.263(1). The trial court sentenced defendant to serve 93 days in jail for the operating a motor vehicle while license suspended, revoked, or denied conviction. It sentenced defendant to concurrent prison terms of 114 months to 40 years for (a) one conviction of possession with intent to deliver less than 50 grams of heroin, second offense; (b) the conviction of possession with intent to deliver less than 50 grams of cocaine, second offense; (c) each conviction of conspiracy to deliver less than 50 grams of cocaine; and (d) one of the convictions of delivery of less than 50 grams of cocaine, second offense. The trial court also sentenced defendant to concurrent prison terms of 114 months to 15 years for each conviction of maintaining a drug vehicle. And it sentenced defendant to a prison term of 34 months to 40 years for the conviction of bringing a controlled substance into a jail facility. The trial court imposed a consecutive prison term of 29

months to 40 years for the second conviction of delivery of less than 50 grams of cocaine, second offense, to be served after defendant's other felony convictions.[1]  We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

A confidential informant (CI) for the Mid-Michigan Investigative Narcotics Team (MINT) participated in three controlled drug buys in January 2020 under the direction of a MINT undercover detective.  On each occasion, the CI contacted defendant and arranged a meeting to buy cocaine.  The CI first went to an apartment to purchase narcotics on January 6, 2020.  Defendant was not present in the apartment; instead, a woman named April Welder (Welder) sold the narcotics to the CI.  As he was leaving, the CI saw defendant walking up to the apartment.

The CI contacted defendant again and arranged to buy cocaine on January 16, 2020.[2]  On arriving at the meeting location, the CI found defendant in the driver's seat of an SUV; Welder was in the front passenger seat.  The CI testified that when he entered the vehicle, defendant "pulled out his scales and started weighing up the crack cocaine on the middle console."  The CI paid defendant for the cocaine using money he had obtained from the MINT officer before the controlled buy.

The informant then arranged another controlled buy from defendant on January 30, 2020.  On that date, the CI again met defendant in the same SUV; this time, Welder was in the driver's seat and defendant was in the backseat, and Welder had the crack cocaine in her hand when the CI entered the SUV.  The CI again used money he was given by MINT detectives to purchase the cocaine.  Officers subsequently conducted a traffic stop and arrested defendant.  A scale of a type commonly used to weigh narcotics was found in the back pocket behind the driver's seat of the SUV; defendant subsequently admitted to police that this scale belonged to him.  The undercover detective searched defendant during an interview following defendant's arrest and found prerecorded funds that had been given to the CI for the controlled buy.  Additionally, the detective felt plastic material in defendant's groin area; the detective twice asked defendant if he had anything on him and defendant twice denied having anything.  The detective did not search defendant further, but arranged to notify the county jail staff that defendant might have contraband.

Defendant was transported to the Isabella County Jail, where intake officers again searched defendant.  One of the officers found a plastic baggie with cocaine residue in defendant's clothing.  A second officer performed a strip-search and recovered additional cash from the waistband of defendant's underwear, as well as a baggie that had been concealed under his testicles.  The baggie

---

[1] The sentences for defendant's two conspiracy to deliver cocaine convictions, two maintaining a drug vehicle convictions, and the bringing a controlled substance into a jail facility conviction were enhanced by defendant's habitual offender, fourth offense status, MCL 769.12.

[2] The CI testified that defendant answered the phone, but that when the CI was unable to understand defendant, a female—whose voice the CI recognized from the January 6th transaction as Welder's—took over the call from defendant.

contained caffeine, a mixture of heroin and fentanyl, and six individually packaged rocks containing cocaine.

Defendant was convicted as described. At sentencing, the trial court assessed defendant 10 points for Offense Variable (OV) 14, finding that defendant was the leader in a multiple-offender situation. It assessed defendant 25 points for OV 19, finding that defendant's conduct in attempting to bring controlled substances into the jail had threatened the security of a penal institution. It also determined that consecutive sentencing under MCL 33.7401(3) was appropriate for defendant's second cocaine delivery sentence, noting that defendant had numerous previous felony convictions, probation and parole and violations, and arrests while on parole. The trial court stated that consecutive sentencing was appropriate due to defendant's low rehabilitation potential, extensive record, and the need for deterrence to others.

This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE—MAINTAINING A DRUG VEHICLE

Defendant argues that there was insufficient evidence to convict him of maintaining a drug vehicle. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Savage*, 327 Mich App 604, 613; 935 NW2d 69 (2019). When determining whether sufficient evidence exists to sustain a conviction, we review the evidence in the light most favorable to the prosecution, and consider whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). We are required to draw all reasonable inferences and make credibility choices in support of the jury verdict. *Id.* The elements of a crime may be proven by direct evidence, circumstantial evidence, and reasonable inferences arising from that evidence. *Id.*

MCL 333.7405(1)(d) provides, in relevant part, that a person shall not

[k]nowingly keep or maintain a . . . vehicle . . . that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances or that is used for keeping or selling controlled substances in violation of this article.

Defendant argues that, because the evidence at trial showed that Welder, not defendant, had leased or rented the SUV, there is insufficient evidence that he knowingly kept or maintained a drug vehicle within the meaning of MCL 333.7405(1)(d). We disagree.

Defendant correctly notes that there was no evidence presented that he owned the SUV in which the controlled buys occurred on January 16, 2020 and January 30, 2020. However, while defendant further argues that the SUV rental was under Welder's name, the record shows that defendant indicated during his interview with a detective that he and Welder were both paying for the rental. In any event, as this Court held in *People v Griffin*, 235 Mich App 27, 32; 597 NW2d 176 (1999), to be convicted of keeping or maintaining a drug house, it is not necessary that the defendant own the house. Similarly, it is not necessary for defendant to have owned or been the named renter on a rental agreement for the SUV in order to have kept or maintained a drug vehicle.

-3-

"The phrase 'keep or maintain' implies usage with some degree of continuity that can be deduced by actual observation of repeated acts or circumstantial evidence, such as perhaps a secret compartment or the like, that conduces to the same conclusion." See *People v Thompson*, 477 Mich 146, 155; 730 NW2d 708 (2007) (discussing the crime of maintaining a drug house).

In this case, the evidence presented during trial would allow a reasonable jury to conclude that defendant had engaged in continued use of the SUV for the purpose of selling controlled substances. The CI texted and called defendant—using a phone number that he knew belonged to defendant—about buying cocaine, and met defendant on two occasions in the same SUV. On both occasions the SUV was used to conduct the transaction, including weighing out and packaging the cocaine for sale to the CI. Defendant admitted that a scale found in the SUV belonged to him; this scale was found behind the driver's seat within reach of defendant, who was seated behind the passenger seat, and the CI testified that the scale was similar to the scale that defendant had used to weigh cocaine on January 16, 2020. Accordingly, the evidence presented at trial was sufficient to find that defendant knowingly kept or maintained a drug vehicle. *Oros*, 502 Mich at 239.

## III. PROSECUTORIAL ERROR

Defendant argues that the prosecution committed error by repeatedly telling the jury during its rebuttal closing argument that the CI was truthful and that his testimony could be trusted. We disagree.

A defendant preserves a claim of prosecutorial error by timely and specifically objecting to the error during trial. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Defendant did not object to the prosecution's comments; therefore, defendant did not preserve this issue for appeal. We review an unpreserved claim of prosecutorial error for plain error. *People v Jones*, 468 Mich 345, 354-355; 662 NW2d 376 (2003). Plain error exists when the defendant establishes that: "(1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Id*. at 355. "Reversal is warranted only when the plain, unpreserved error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Id*.

"Claims of prosecutorial [error] are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Isrow*, ___ Mich App ___, ___; NW2d ___ (2021) (Docket Nos. 351665 and 354834); slip op at 4 (quotation marks and citation omitted). "A prosecutor cannot 'vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness' . . . ." *Id*. at ___; slip op at 4, quoting *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). Additionally, the prosecution cannot "mischaracterize evidence." *Id*. at ___; slip op at 4. "However, the prosecutor may argue from the evidence, and reasonable inferences from it, to support a witness's credibility." *Id*. at ___; slip op at 4. "The prosecutor also may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Id*. at ___; slip op at 4 (quotation marks and citation omitted).

In defense counsel's closing argument, counsel attacked the credibility of the CI—a witness for the prosecution's case. Defendant's counsel questioned the CI's credibility because he had testified in exchange for a favorable plea deal in a separate and unrelated case. In rebuttal, the prosecution argued that although the CI had stated that he needed to "take people down" to fulfill the terms of his plea agreement, it did not "mean he took people down illegally or improperly or lied about what he did." The prosecution argued that the CI "was quite credible," because he did not testify regarding information that he did not remember. The prosecution then reviewed the evidence that, it contended, corroborated the CI's testimony, and stated, "I guess bottom line, ladies and gentlemen, [the CI] testified . . . to the truth of the matters that he participated in. Certainly, if he was lying, he could've lied about a lot of other things or tried to implicate the Defendant further as I explained before." The prosecution also told the jury, "You can believe him."

The prosecution's statements, when viewed in context, do not constitute prosecutorial error because they were made in response to defense counsel's argument and theory of the case—that the CI was not a credible witness. See *People v Jackson*, 313 Mich App 409, 427; 884 NW2d 297 (2015). The prosecution argued that the CI's testimony was credible because it was corroborated by other evidence, which was proper. See *People v Clark*, 330 Mich App 392, 434-435; 948 NW2d 604 (2019). Moreover, the prosecution did not imply that it had any special knowledge that the witness was telling the truth. We conclude that defendant has failed to show error, plain or otherwise, in the challenged remarks. Further, because "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel," *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), we likewise reject defendant's argument that his trial counsel was ineffective for failing to object to the prosecution's comments. See *Isrow*, ___ Mich App at ____; slip op at 5.

## IV. CONSECUTIVE SENTENCING

Defendant argues that the trial court abused its discretion when it imposed a consecutive sentence. We disagree. We review for an abuse of discretion a trial court's decision to impose a consecutive sentence when a statute authorizes, but does not mandate, it to do so. *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016).

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Baskerville*, 333 Mich App 276, 289; 963 NW2d 620 (2020) (quotation marks and citation omitted). When a trial court fashions a defendant's sentence it should consider: "(a) reformation of the offender; (b) protection of society; (c) disciplining the offender; and (d) the deterrence of others from committing like offenses." *People v Solmonson*, 261 Mich App 657, 672 n 4; 683 NW2d 761 (2004). Additionally, a court may consider a defendant's lack of remorse and low potential for rehabilitation, but it may not consider, even in part, a defendant's failure to admit guilt. *People v Carlson*, 332 Mich App 663, 675; 958 NW2d 278 (2020). To determine whether a sentencing court improperly considered a defendant's failure to admit guilt, a reviewing court should consider: "(1) the defendant's maintenance of innocence *after conviction*; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe." *Id*. (quotation marks and citation omitted; emphasis added). "[I]f there is an indication of the three factors, then the sentence was likely to have been improperly

influenced by the defendant's persistence in his innocence." *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007) (quotation marks and citation omitted; alteration in original).

In this case, MCL 333.7401(3) authorized, but did not require, the sentencing court to impose a consecutive sentence for a violation of MCL 333.7401(2)(a) (possession of a Schedule 1 or 2 controlled substance with intent to deliver). The trial court noted multiple factors: defendant had an extensive criminal record;[3] defendant had been to prison previously; defendant "had repeated probation violations and parole violations, and the presentence investigation report (PSIR) indicated "that 'parole has not been a deterrence' for [defendant]"; defendant was arrested multiple times while on parole; and defendant was "convicted of possession of a controlled substance in 2019 . . . after being charged with delivery offenses," before committing the current offenses. On the basis of defendant's record, the trial court stated that it did not believe that defendant had "any intent to be a law-abiding citizen." Defendant had "progressively gotten worse from stealing cars several times when [he was] younger to now, being a full-fledged drug dealer." Therefore, the sentencing court believed that a consecutive sentence was appropriate in light of defendant's culpability, criminal record, and potential for rehabilitation. Additionally, the trial court considered the deterrence of others in imposing a consecutive sentence, because it recognized that "Isabella County has a serious drug problem because there's avenues . . . for drug dealers to come and sell."

The trial court's decision to impose a consecutive sentence was within the range of reasonable and principled outcomes under the circumstances of this case. See *Baskerville*, 333 Mich App at 29. Defendant's extensive record of felony offenses and poor performance when on probation and parole support the trial court's conclusion that defendant had a low potential for rehabilitation. Although defense counsel asked that defendant receive treatment for his substance abuse issues, the record shows that, regardless of defendant's personal addiction, he is extremely likely to return to the selling of controlled substances even while on probation or parole. Moreover, the trial court did not abuse its discretion when it considered defendant's criminal history or the drug problem in Isabella County, because reformation of the offender and deterrence of others are two known goals of sentencing. See *Solmonson*, 261 Mich App at 672 n 4.

Additionally, the record shows that the trial court did not improperly consider defendant's refusal to admit guilt when it imposed the consecutive sentence. While the sentencing court discussed defendant's refusal to accept responsibility, the court did not attempt to make defendant admit guilt or imply that he would have received a lesser sentence if he had not maintained his innocence. Additionally, it does not appear that defendant made any claims or protestations of innocence during the sentencing hearing. See *Dobek*, 274 Mich App at 105.

---

[3] Although the trial court at one point stated that "this is [defendant's] 14th felony conviction," the record shows that defendant had been convicted of 11 felonies and 2 misdemeanors prior to his most recent arrest and trial. The prosecution had correctly stated defendant's prior offenses earlier during the sentencing hearing, and the pre-sentence investigation report also contains this information. It does not appear, and defendant does not argue, that the trial court based its sentencing determination on the incorrect belief that defendant had been convicted of 13, rather than 11, previous felonies.

The trial court did not abuse its discretion by imposing a consecutive sentence in this case. *Norfleet*, 317 Mich App at 664. Its decision to do so was within the range of reasonable and principled outcomes. *Baskerville*, 333 Mich App at 29.

## V. OV 14

Defendant argues that the trial court incorrectly assessed 10 points for OV 14. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when [this Court is] left with a definite and firm conviction that a mistake was made." *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019). " 'Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo.' " *Id.*, quoting *Hardy*, 494 Mich at 438.

"Under MCL 777.22, OV 14 must be scored for all felony offenses." *People v Dickinson*, 321 Mich App 1, 21; 909 NW2d 24 (2017). OV 14 "is scored at either 10 points or zero points, depending on whether the defendant was 'a leader in a multiple offender situation' when considering the 'entire criminal transaction.' " *People v Rhodes*, 305 Mich App 85, 87; 849 NW2d 417 (2014) (citing MCL 777.44). If the defendant "was a leader in a multiple offender situation," then OV 14 is scored at 10 points. MCL 777.44(1)(a). As previously recognized by this Court, "the plain meaning of 'multiple offender situation' as used in OV 14 is a situation consisting of more than one person violating the law while part of a group." *Dickinson*, 321 Mich App at 22 (quotation marks and citation omitted).

The evidence at trial demonstrated that defendant and Welder violated the law together, that defendant arranged the sale of drugs to the CI, and that he controlled the money, the drugs, and the amount of drugs sold. The CI used a phone number that he knew belonged to defendant to arrange the controlled buys, and he spoke to defendant on the phone before the controlled buys on January 16 and January 30. Defendant and Welder each drove the SUV to one buy. The CI observed defendant weighing out cocaine for sale, and defendant admitted that the scale in the SUV belonged to him. Furthermore, officers found $591 in cash, six baggies of cocaine, a heroin and fentanyl mixture, caffeine (a common "cutting agent"), and drug residue in defendant's possession. The CI also testified that defendant made the decision to refuse to sell the CI larger amounts of cocaine; during the January 30 buy, he asked defendant about purchasing larger quantities of cocaine, but defendant declined because he "just dealt with the 50's and 100's or whatever."

In sum, a preponderance of the evidence supported the trial court's finding that defendant was a leader in a multiple offender situation. *Hardy*, 494 Mich at 438. Although defendant argues that the evidence showed that Welder had rented the SUV, had also spoken with the CI on the phone, and had physically handed the cocaine to the CI on two occasions, that evidence is not so overwhelming that we are convinced that the trial court made a mistake. *Id.* Therefore, the trial court did not err when it assessed 10 points for OV 14.

## VI.  OV 19

Defendant also argues that the trial court erred by assessing 25 points for OV 19.  We disagree.

MCL 777.49 provides:

Offense variable 19 is threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services.  Score offense variable 19 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) The offender by his or her conduct threatened the security of a penal institution or court ....................................................................................... 25 points

(b) The offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services .................................................................................. 15 points

(c) The offender otherwise interfered with or attempted to interfere with the administration of justice ........................................................................... 10 points

(d) The offender did not threaten the security of a penal institution or court or interfere with or attempt to interfere with the administration of justice or the rendering of emergency services by force or threat of force ......................... 0 points

In this case, a preponderance of the evidence shows that defendant intentionally maintained possession of controlled substances after his arrest to transport the drugs into the jail.  The evidence shows that defendant twice refused to disclose his possession of the controlled substances at the time of his arrest and then refused to hand over the drugs to officers at the jail.  Defendant's attempt to deliver cocaine, heroin, and fentanyl into the confines of the jail threatened the safety and security of both the guards and the prisoners and, therefore, threatened the security of a penal institution.  *Dickinson*, 321 Mich App at 23-24.  The trial court did not err when it assessed 25 points for OV 19.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron

-8-