# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v

MARIO KEEREAM JACKSON,

　　　　　Defendant-Appellant.

UNPUBLISHED
August 16, 2016

No. 326805
Wayne Circuit Court
LC No. 14-006836-FH

Before: BECKERING, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm.

In the early morning hours of July 25, 2014, defendant was standing in the middle of a street with several other people and was holding a bottle of Remy Martin. An officer riding in the front passenger seat of a fully marked Detroit Police Department (DPD) scout car saw defendant spot the scout car and then walk over to an occupied parked car, remove a handgun from his waistband, and drop it through the car's open rear window. The officer then got out of the scout car and approached defendant. The gun—which was loaded—was recovered and defendant, a felon, was arrested. Subsequently, a discovery order was entered directing the production of any scout car video tape existing with regard to this arrest. When no video tape was produced, defendant filed a motion to dismiss the charges for failure to preserve evidence.

At the hearing on defendant's motion, the officer in charge of the case, Detective Matthew Van Raaphorst, testified that he received the discovery order for any scout car video and submitted a request to the Technical Services Bureau, which is in charge of retrieving all video from the scout cars. The Technical Services Bureau responded that the requested scout car video did not exist. Van Raaphorst explained that video from a scout car is stored for a particular period of time depending on what triggered the recording, such as opening the rear car door, activating the overhead lights, and activating the officers' body microphones. If a certain trigger did not cause activation, the video may be kept for 24 to 48 hours before it is automatically deleted. But if a certain trigger did activate the recording, the video could be kept for 30 to 90 days. During cross-examination, Van Raaphorst admitted that the memorandum

-1-

from Technical Services stated that there was no scout car video for the date of July 24, 2014, at 12:35 p.m., but the actual incident occurred on July 25, 2014, at 12:35 a.m.

The trial court denied defendant's motion to dismiss, holding that defendant failed to show either that the video tape would have been favorable to the defense or that the police acted in bad faith in failing to preserve this evidence.

On appeal, defendant argues that his motion to dismiss should have been granted because the efforts of the police and prosecution to comply with the discovery order concerning any video tape from the scout car showed bad faith and/or gross negligence, resulting in the destruction of potentially exculpatory evidence. Defendant further contends that the prejudice to him was accentuated by the prosecutor's impermissible and unsupported factual statement during rebuttal argument that, had the video been properly preserved and presented, it would have shown defendant in possession of a firearm. We disagree with both arguments.

We review for an abuse of discretion a trial court's ruling on a motion to dismiss for discovery violations. *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002); *People v Davie (After Remand)*, 225 Mich App 592, 597-598; 571 NW2d 229 (1997). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). We review the trial court's underlying factual determinations for clear error. *People v Tracey*, 221 Mich App 321, 323; 561 NW2d 133 (1997). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

"'[T]he suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution.'" *Arizona v Youngblood*, 488 US 51, 55; 109 S Ct 333; 102 L Ed 2d 281 (1988), quoting *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). The defendant has the burden to show that the evidence was potentially exculpatory and was actually withheld by the prosecution. *People v Johnson*, 197 Mich App 362, 365-366; 494 NW2d 873 (1992). However, the standard under *Brady* regarding the government's failure to disclose or produce evidence does not similarly apply to the government's failure to preserve evidence.

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said then it could have been subjected to tests, the results of which might have exonerated the defendant. [*Youngblood*, 488 US at 57.]

Unless the defendant can demonstrate bad faith, the State's failure to preserve potentially useful evidence does not constitute a denial of due process. *Id*. at 58. See also *People v Heft*, 299 Mich App 69, 79; 829 NW2d 266 (2012).

In this case, a discovery order was entered directing the production of any scout car video tape existing with regard to defendant's arrest and no video tape existed to produce. But even if it did exist, it could not have shown the key events—namely, defendant removing a handgun from his waistband and dropping it through the open rear window of a parked car. Thus, the video tape could not have been exculpatory. That is, a police officer observed defendant remove a gun from his waistband and drop it through the rear window of a parked car while patrolling the area. Because the recording system in the scout car was not triggered to activate at that time—either by the opening of a scout car door or because the overhead oscillating lights were turned on—defendant's alleged actions would not have been videotaped. Thus, defendant could not show that his due process rights were violated because the prosecution withheld potentially exculpatory evidence by not producing the video tape. See *Johnson*, 197 Mich App at 365.

Further, defendant did not demonstrate bad faith with regard to the failure to preserve any video tape recording. See *Heft*, 299 Mich App at 79. There is no evidence showing that the DPD's routine destruction of the video footage occurred despite knowledge of any potential exculpatory value to defendant. Such automatic procedures to clear police department storage space alone do not constitute bad faith. See *Johnson*, 197 Mich App at 365; *People v Albert*, 89 Mich App 350, 352; 280 NW2d 523 (1979). Moreover, it does not appear that Detective Van Raaphorst had any motive not to produce the video tape. He was not involved in defendant's arrest. Nor is there any evidence that the Technical Services Bureau had reason not to search for or produce the correct video. While the trial court noted that there was "a lot of sloppiness" with regard to the video tape, the court viewed the evidence and specifically refused to infer bad faith in that regard. See MCR 2.613(C). Therefore, the trial court properly denied defendant's motion to dismiss premised on the claim that he was denied due process by the failure to preserve the video tape. See *Heft*, 299 Mich App at 79.

Defendant also seems to claim that the prosecutor committed misconduct during his rebuttal argument by making a statement of fact to the jury that was unsupported by the evidence with regard to the missing video tape. However, prosecutorial comments must be read as a whole and evaluated in light of defense arguments. *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). At trial, defense counsel raised the issue of the missing video tape during closing argument:

> [A] video would have backed up the story. A video would have been great. Even if, like the officers testified, maybe the camera wasn't working when they came down the street, when they allegedly saw Mr. Jackson put the gun in the car. Okay. But it triggers when the lights are turned on, which Officer Washington said happened, or when the back doors open, like when Officer Monti jumped out. So we should have some video then. And then if it triggered when the back door opened, then the video would have started as soon as they pulled up. That video, had the police been telling the truth, probably would have backed up their entire story, or maybe it didn't, and that's why that video is not here.

The prosecutor responded in rebuttal argument:

> In this particular case I would have rather enjoyed having a video. Because if we had a video that was staring at the scene, you would have seen the defendant walk

over, take the gun out and drop the gun in the back seat of the car. And then the part that I would have really enjoyed is I can tell you for almost certainty that Mr. Jackson still would have taken the stand and still would have tried to come up with some reason why he's not guilty of these offenses. So I would have really liked to have it, but alas we did not.

Defendant claims on appeal that the prosecutor's comments were impermissible. But defense counsel implied that the police were lying about defendant and, because the video tape would have exonerated him, it was destroyed. The prosecutor is permitted to respond to such an accusation and defendant was not denied a fair and impartial trial as a consequence of doing so. See *People v Jones*, 468 Mich 345, 353-354; 662 NW2d 376 (2003).

Next, defendant argues that he was denied the effective assistance of counsel because his attorney failed to object when the prosecutor made a statement of fact to the jury in rebuttal argument that was unsupported by the evidence with regard to the failure of the police to fingerprint the recovered gun. We disagree. Because defendant did not move for a new trial or request an evidentiary hearing in the trial court, this issue is not preserved and our review is limited to errors apparent on the record. *Heft*, 299 Mich App at 80.

To establish ineffective assistance of counsel, a defendant must show that defense counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (citation omitted). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

The gun that was recovered by the police was not tested for fingerprints by the Michigan State Police (MSP), which tested its operability. The MSP has a policy not to do so if the request states that the weapon was seized from a suspect's person, even if the submitting agency requests fingerprinting. In this case, the forms submitted to the MSP incorrectly stated that the gun was taken from the suspect's person so there was no testing for fingerprints.

In his closing argument, defendant's trial counsel discussed the lack of fingerprint testing on the gun as follows:

Next thing, fingerprints, fingerprints on the gun, none, none. Why? Because Officer Lyons -- well, partially, I don't want to lie, but partially because Officer Lyons checked the wrong box. And, granted, the detective said that that doesn't directly pull into it; that he does his own look at it. And he put that the gun was observed taking [sic] off of persons. Had he not put that, we could have had some fingerprints. We could have had some fingerprints. . . .

In his rebuttal argument, the trial prosecutor also discussed the lack of fingerprint evidence in the case:

Fingerprints, look, they weren't tested by MSP. Go home, write a letter to the Michigan State Police . . . . Go ahead and do that, but that is the only evidence

-4-

that you've heard in this trial, okay. You have not heard any evidence that there was [sic] fingerprints on the gun.

You have a lot of gun owners here. Fingerprints cannot be seen on a gun or cannot be -- you can handle a gun a hundred times and there would be no fingerprints on a gun. It's different.

And the bottom line is, look, I'm not an expert. What I just said, don't consider that evidence. What he said -- what the defense attorney said, don't consider that evidence. The only evidence you heard in this particular case is from the witness stand, and it says MSP doesn't test them for prints in this type of situation. . . . But the defense attorney basically suggested that because there's not more evidence, okay, even though we're already beyond a reasonable doubt, that should be reason to find the defendant not guilty.

Again, a prosecutor's comments must be reviewed in context and a prosecutor is permitted to respond to defense counsel's argument. *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996). Here, while the prosecutor's remarks were responsive to defense counsel's argument, the remarks also improperly included facts that were not in evidence regarding whether fingerprints can be obtained from a firearm. However, the prosecutor almost immediately downplayed his remarks by admitting that he was not a fingerprint expert and told the jury not to consider his remarks as evidence. Even if defense counsel had objected at this point, the goal of a defense objection to prosecutorial remarks is a curative instruction which would have paralleled the prosecutor's own statements. See *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). And the trial court did later instruct the jury that the attorneys' arguments were not evidence. Under the circumstances of this case, there is no reasonable probability that, but for defense counsel's failure to object to the improper argument, the result of the proceeding would have been different. See *Vaughn*, 491 Mich at 669. Thus, defendant's ineffective assistance of counsel claim is without merit.

Affirmed.


/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola