*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MUNOZ/RODRIGUEZ/RUIZ, Minors.

UNPUBLISHED
May 18, 2023

No. 362981
Wayne Circuit Court
Family Division
LC No. 2021-000943-NA

Before: GLEICHER, C.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Respondent, E. Ruiz, appeals as of right the trial court's order terminating her parental rights to her minor children LRM, LEM, XEM, GR, and JAR pursuant to MCL 712A.19b(3)(g) (failure to provide proper care or custody) and (j) (reasonable likelihood of harm to the child if returned). We affirm.

## I. BACKGROUND

In November 2019, respondent abruptly left her romantic partner and the biological father of LRM, LEM, and XEM, A. Munoz. Despite the fact that Munoz never legally established his parentage to the children, respondent left LRM, LEM, and XEM in his care without the legal authority needed to care for them. Respondent left GR and JAR, whose fathers were unknown, with her mother, R. Barboza, also failing to leave her with legal authority over the children. Respondent seldom visited the children during the period between November 2019 and the summer of 2021. When she did visit, she would show up unannounced. She also failed to regularly check on them or provide financial support. For much of this period, her whereabouts were unknown.

In June 2021, respondent's younger sister disclosed that she was sexually abused by Munoz when she would visit respondent and Munoz's apartment before they separated in 2019. Respondent's sister was a 10-year-old minor at the time of the abuse. This disclosure led to the removal of LRM, LEM, and XEM, who the Department of Health and Human Services ("DHHS") then placed with Barboza. In October 2021, DHHS filed a petition to terminate respondent's parental rights to the children at the initial dispositional hearing on the basis of respondent's abandonment of her children. The trial court offered supervised visitation while the proceedings were pending, but the respondent rarely visited the children. Respondent failed to attend several

-1-

court hearings, did not maintain contact with the caseworker, and did not regularly inform her mother, her attorney, or the caseworker of her whereabouts and contact information. Respondent did not appear for the first day of the adjudication trial, participated in the second day of trial by phone from a location in California, and participated in the third day of trial by Zoom after returning to Michigan; however, she did not attend the final hearing at which the trial court assessed whether termination of parental rights was in the best interests of the children. At the conclusion of the four-day hearing, the trial court found that grounds for termination were proved pursuant to MCL 712A.19b(3)(g) and by clear and convincing evidence that termination of respondent's parental rights was in the children's best interests. This appeal followed.

## II. REASONABLE EFFORTS

Respondent argues that the trial court erred by terminating her parental rights without first offering services. We disagree.

Because respondent never argued prior to appeal that the trial court could not properly terminate her parental rights without offering her an opportunity to participate in services, this issue is unpreserved. See *In re v Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000); *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502 & 358503); slip op at 2; *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Accordingly, we review for plain error affecting respondent's substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). As explained in *In re Utrera*:

> Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings. When plain error has occurred, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." [*Id.* at 9 (citations omitted).]

Respondent, as the party asserting error, has the burden of demonstrating a plain error affecting her substantial rights. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

In general, DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). However, reunification efforts are not required when "aggravated circumstances" exist. MCL 712A.19a(1)(a). Two of such circumstances include the "[a]bandonment of a young child" and "placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk . . . ." MCL 722.638(1)(a)(*i*), (2). In this case, the record thoroughly and unequivocally established that respondent abandoned all five of her children. Respondent left three of her children with Munoz and two with Barboza without giving them the appropriate legal authority needed to take care of them; she did not execute a power of attorney, she did not establish a guardianship, and she did not establish Munoz as a legal father. She also provided no financial support and went months at a time without visiting them. Moreover, LRM, LEM, and XEM were placed at an unreasonable risk of harm by respondent leaving them in the care of a person who sexually abused her younger sister while she and the children were at the home with him.

-2-

Respondent makes a cursory reference to the Americans with Disabilities Act (ADA), 42 USC 1201 *et seq.*, stating that "it appears Appellant mother was intitled [sic] to additional services pursuant to the American Disability Act [sic] which the Agency never provided." However, respondent did not cite any specific provisions of the ADA and, likewise, did not explain how the ADA entitled her to services or what services were not provided. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for [the party's] claims, or unravel and elaborate [for the party that party's] arguments, and then search for authority either to sustain or reject [the party's] position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1997) (quotation marks and citation omitted). Thus, respondent has likewise failed to establish plain error concerning the ADA.

Therefore, because respondent abandoned all five children and left three in the care of a man who sexually abused respondent's minor sister, she has not established plain error with respect to DHHS's decision not to provide reasonable efforts toward reunification.

## III. STATUTORY GROUNDS

Respondent argues that the trial court clearly erred by finding that clear and convincing evidence supported a statutory ground for termination. We disagree.

"This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016) (citation omitted). "A finding is clearly erroneous if, although there is evidence to support it, [this Court] is left with a definite and firm conviction that a mistake has been made." *Id.* at 408 (citation omitted). "In applying the clear error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id.* at 409 (quotation marks and citation omitted).

The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(g) and (j), which permit termination of parental rights under the following circumstances:

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The evidence clearly established MCL 712A.19b(3)(g), and because only one ground for termination need be proved, we decline to review MCL 712A.19b(3)(j). See *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011) ("Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds.").

-3-

Before these proceedings began, respondent left all five children in the care of Barboza and Munoz without ever again attempting to care for them. She failed to regularly visit or check on them. At trial, Barboza described respondent as "a very unstable person," and explained that weeks would often go by without the family knowing her whereabouts. When respondent would visit the children, which was infrequent, it was not on a set schedule, and "she would just come by and see them like every so often." Respondent admitted to using cocaine and acknowledged that she had received mental health treatment for major depressive disorder, postpartum depression, post-traumatic stress disorder, and bipolar disorder without establishing that she benefitted from any treatment she received.

After the petition was filed in October 2021, respondent was provided with the opportunity for supervised visitation with her children, but she continued with her perpetual lack of engagement. She failed to attend several court hearings, and she did not regularly visit her children, check in on them, or financially support them. Indeed, at one point, respondent went to California without giving notice to DHHS, and she never contacted the children while in California. When respondent returned to Michigan, the caseworker set up a schedule for visitation three days a week, for two hours each day, but respondent never attended any of the scheduled visits. Respondent also failed to attend the best-interest hearing on July 29, 2022, and neither her counsel nor the caseworker knew her whereabouts. According to the caseworker, respondent's last reported visit with the children was in January 2022.

In sum, clear and convincing evidence demonstrated that respondent disengaged from her children's lives almost two years before DHHS became involved. She did not visit them regularly or check on them, and did not maintain regular contact with her family, who often did not know her whereabouts. This same pattern continued after the petition was filed. Respondent did not regularly visit her children, did not maintain contact with the caseworker, failed to attend several court hearings, and her mother, who was caring for the children, often did not know respondent's whereabouts. Under these circumstances, the trial court did not clearly err by finding that respondent failed to provide proper care and custody for her children and would not do so within a reasonable period of time.

## IV. BEST INTERESTS

Respondent argues that the trial court clearly erred by finding that termination of her parental rights was in the children's best interests. We disagree.

If a trial court finds that the statutory grounds for termination have been established, it must order termination of parental rights only if it finds that doing so is in the best interests of the child. MCL 712A.19b(5). This Court reviews a trial court's finding that termination is in the child's best interests for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A trial court's decision is clearly erroneous [i]f although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks and citation omitted; alteration in original).

When determining if termination is in the best interests of the children, the trial court may consider factors such as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home of the parent's

home." *Id*. at 41-42. (citations omitted). "[B]ecause a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a), the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *Id*. at 43 (quotation marks and citation omitted). Other factors that the trial court can consider include the parent's compliance with the service plan and the parent's visitation history. *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014).

At the time of the best-interest hearing in July 2022, the caseworker did not know respondent's whereabouts and had not heard from her since May 2022 when respondent reported she returned to Michigan from California. Following her return, the caseworker set up a visitation schedule for respondent at Barboza's home three days a week, for two hours each visit, but respondent never attended any of the scheduled visits. According to the caseworker, respondent's last scheduled visit was in January 2022.

All five children had been placed with Barboza since October 2021, and GR and JAR had been with her since November 2019. Barboza had taken care of the children "off and on" since their birth, long before the children were placed with her. Additionally, she had taken care of their medical needs and provided for them without financial support from respondent. The caseworker reported that all five children were doing well in their placement, and "[t]hey have a really strong and loving bond with" Barboza. The children referred to Barboza as their mother, and Barboza was willing to care for them long term. Although Barboza favored a guardianship arrangement, she also told the caseworker that "whatever was best for the children she would be in support of."

The caseworker did believe there was some bond between the children and respondent. If respondent did not appear for visitation, "it would spark behaviors, spark them to get upset. Hurt feelings behind not being able to see her." Accordingly, Barboza generally would not tell the children when respondent was planning to visit because she did not want them to become upset if and when respondent did not show up. The caseworker testified that termination of respondent's parental rights was in the children's best interests because "mom hasn't been around with the kids. Hasn't visited. Hasn't maintained contact information. If something was [sic] to go wrong we have no way to reach out to her."

Given these facts, the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests.

To the extent that respondent argues that termination was not warranted due to the children's relative placement, this argument is not persuasive. When considering a child's best interests, the child's placement with a relative is a factor that weighs against termination but is not dispositive. A trial court may still terminate parental rights when a child is placed with a relative if termination is in nonetheless the child's best interests. *Atchley*, ___ Mich App at ___; slip op at 7. In this case, the trial court duly considered that the children were placed with their maternal grandmother and this impacted on its analysis, but it also observed that respondent had not made any meaningful effort to engage with the children during their placement, both before and after the petition was filed. With there being no evidence that respondent had any interest in fostering a relationship with her children, the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests despite the relative placement.

-5-

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado